Mickey ATKINS, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–97–00832–CR.

Court of Appeals of Texas, Austin.

Feb. 11, 1999.

Discretionary Review Refused June 9, 1999.

**764**

John C. Kuhn, Kuhn, Doyle & Kuhn, P.C., Austin, for Appellant.

Eugene D. Taylor, Williamson County Attorney, Dan M. Gattis, Assistant County Attorney, Georgetown, for the State.

Before Chief Justice ABOUSSIE, Justices KIDD and POWERS.[*]

MACK KIDD, Justice.

A jury convicted Mickey Dale Atkins of the offense of driving while intoxicated ("DWI")[1] and assessed punishment at 180 days in the county jail, probated for twelve months, and a fine of $2,000, $1,000 of which was probated. In seven points of error Atkins claims the trial court erred in its instructions and charge to the jury.[2] Although we disapprove of an instruction given by the trial court, we will affirm the judgment of conviction.

## BACKGROUND

On August 10, 1996, Trooper Eric Hansen of the Texas Department of Public Safety (the "DPS") initiated a traffic stop of Atkins around 2 a.m. in Williamson County. Trooper Hansen testified to a number of traffic violations that prompted the stop and created suspicion that Atkins was intoxicated: Atkins sat too long at a blinking red light, drove 70 mph in a 55 mph zone, drove outside the boundaries of his lane, and changed lanes without signaling. After stopping Atkins, Trooper Hansen asked Atkins to get out of the vehicle and to show his driver's license. Trooper Hansen testified that Atkins had a "very strong" odor of alcohol. Trooper Hansen also testified to slurred speech and a sway in Atkins's posture as he stood. Atkins indicated he had been at a poker party and had consumed "about three beers." Atkins further indicated that he had only slept about four hours in the last twenty-four hours, and thus felt very fatigued.

Trooper Hansen asked Atkins to perform a series of field sobriety tests: the Horizontal Gaze Nystagmus ("HGN") test,[3] the walk-turn test, the one-legged test, and a recital of the alphabet. The first three tests comprise the standardized field sobriety tests generally performed by troopers of the DPS, and Trooper Hansen was certified to perform these tests. The alphabet test was used by Trooper Hansen because he felt it provided a reliable additional indicator of intoxication. Trooper Hansen testified that Atkins failed all six indicators of the HGN test, failed to follow proper instructions and was unsteady on the walk-turn test and one-legged test, and became confused during a recitation of the alphabet. Trooper Hansen then arrested Atkins for DWI.

Because Atkins refused a breath test, the State built its case at trial from a videotape of the stop and the testimony of Trooper Hansen. Atkins countered with witness testimony from his wife and a colleague that Atkins's behavior on the videotape was due to fatigue rather than intoxication. Before the jury retired, At-

---

[*] Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

[1.] *See* Tex. Penal Code Ann. § 49.04 (West 1994).

[2.] Appellant originally briefed nine points of error, but at oral argument conceded his first two concerning alleged error in admitting videotape due to the binding precedent established in *Gassaway v. State,* 957 S.W.2d 48 (Tex.Crim.App.1997).

[3.] The HGN test measures the involuntary jerking of the eyes of a subject by holding the subject's gaze on a stimulus, often a flashlight or pen. The jerking of the eyes is greatly enhanced by the introduction of alcohol into the body. *See Emerson v. State,* 880 S.W.2d 759, 763–770 (Tex.Crim.App.1994).

kins objected to the jury charge that instructed the jury upon the synergistic effects of fatigue and alcohol; the objection was overruled. The jury returned a verdict of guilty for the charge of DWI.

## DISCUSSION

This case concerns the propriety of a jury charge instructing the jury about the possible synergistic effects of fatigue and alcohol.[4] The instruction stated:

You are instructed that if a Defendant allows his physical condition to deteriorate to such an extent that he thereby makes himself more susceptible to the influence of alcohol than he otherwise would have been and *by reason thereof he becomes intoxicated by the introduction of alcohol into his body,* he would be in the same position as though his intoxication, if any, was produced by the use of alcohol alone and you find facts of the foregoing beyond a reasonable doubt.

(emphasis added). In seven points of error, Atkins claims the trial court erred in its jury charge because: (1) the instruction allowed consideration of Atkins's physical condition, and thus violated the statutory definition of "intoxication"; (2) the instruction allowed consideration of Atkins's physical condition, which reduced the elements of the offense and shifted the State's burden; (3) there was no evidence to support the submission of the instruction; (4) the instruction was misleading and ambiguous; (5) the instruction introduced an additional and unauthorized element, and failed to provide for the necessary mens rea; (6) the instruction constituted an impermissible comment on the weight of the evidence;

and (7) the instruction's definition of "intoxicated" was unauthorized by the Texas Penal Code. Before addressing the specific points of error, some general discussion is necessary.

The Texas Penal Code defines "intoxicated" as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substance, or any other substance into the body; or having a blood alcohol concentration of 0.10 or more." Tex. Penal Code Ann. § 49.01(2) (West 1994). Thus, the statute provides for either an objective standard (.10 blood alcohol concentration) or a subjective standard[5] (impaired mental or physical faculties by reason of introduction of alcohol) to determine intoxication. Because Atkins refused a breath test, the State was required to prove Atkins was intoxicated according to the more subjective standard that he did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol. *See id.* § 49.01(2)(A).

Because Atkins's behavior must be gauged subjectively, indicators of his aberrant behavior may be susceptible to multiple explanations. Atkins seeks to explain his erratic behavior by claiming severe fatigue. Defendants in other DWI cases have likewise attempted to explain away physical impairment by attributing it to other sources. *See State v. Williams,* 814 S.W.2d 256 (Tex.App.—Austin 1991), *aff'd,* 832 S.W.2d 52 (Tex.Crim.App.1992) (motion to suppress blood test granted because red eyes and slurred speech may have been due to either alcohol or car

---

4. A careful reading of the disputed portion of the trial court's instruction reveals that neither fatigue nor its synergistic effect with alcohol upon intoxication was expressly mentioned. However, the instruction was argued by counsel in such a manner, both at trial and before this Court.

5. We do not use the term "subjective" here to imply any arbitrariness in the application of

the § 49.01(2)(A) standard or any dependency upon the perceptions of the particular observer. Rather, "subjective" is merely used in contradistinction to the scientific verifiability, or "objectivity," of a .10 blood alcohol concentration. We recognize that both 49.01(2)(A) and (2)(B) require intoxication to be measured against a single, objective standard, either .10 or "normal use."

accident); *Haskins v. State*, 960 S.W.2d 207, 209 (Tex.App.—Corpus Christi 1997, no pet.) (evidence of intoxication was sufficient despite defendant's alternative explanation that he had a bad knee and diabetes); *Reagan v. State*, 968 S.W.2d 571, 572 (Tex.App.—Texarkana 1998, pet. ref'd) (defendant not entitled to have State prove his normal behavior before putting on evidence of physical or mental impairment).

The State cites a line of cases, however, that it claims stands for the proposition that a defendant who allows his physical condition to deteriorate to the extent that he is more susceptible to alcohol than normal cannot claim this synergistic effect as a defense to intoxication. *See Sutton v. State*, 899 S.W.2d 682 (Tex.Crim.App. 1995); *Heard v. State*, 665 S.W.2d 488 (Tex.Crim.App.1984); *Miller v. State*, 170 Tex.Crim. 406, 341 S.W.2d 440 (1960); *Kessler v. State*, 136 Tex.Crim. 340, 125 S.W.2d 308 (1938).

In *Kessler*, the defendant acted intoxicated and smelled of whiskey after a car accident, but denied that her behavior could be attributed to whiskey because she had taken several tablets of amytal. A doctor testified that amytal was a sedative and has the same effect as whiskey. In upholding the verdict of guilty, the Court of Criminal Appeals stated "[a] person who gets himself in a condition whereby he may become intoxicated from a lesser quantity of whiskey than it would ordinarily take to produce intoxication is nevertheless intoxicated from the use of whiskey." *Kessler*, 125 S.W.2d at 309.[6]

In *Miller*, a conviction for DWI was affirmed despite a showing that the defendant's blood alcohol concentration was only .04. *See Miller*, 341 S.W.2d at 442. The Court of Criminal Appeals relied on both the testimony of a toxicologist regarding the presence and effect of phenobarbital in the defendant's blood and the precedent established in *Kessler* for the proposition

that the defendant's lowering of his tolerance through the ingestion of phenobarbital could not be used as a defense to intoxication. *See id.* at 441–42.

In *Heard*, the Court of·Criminal Appeals held the trial court did not err in instructing the jury that it could convict defendant for DWI upon finding that her intoxication was due to either liquor alone or to the combination of liquor and drugs. *See Heard*, 665 S.W.2d at 489. The contested instruction stated: "You are further instructed that if a Defendant indulges in the use of drugs to such an extent that he thereby makes himself more susceptible to the influence of intoxicating liquor than he otherwise would have been and by reason thereof becomes intoxicated from the recent use of intoxicating liquor, he would be in the same position as though his intoxication was produced by the use of intoxicating liquor alone." *Id.* Once again, the court relied upon *Kessler* in reaching its decision. *See id.*

Finally, in *Sutton*, the Court of Criminal Appeals granted petition expressly to determine whether a jury charge on the synergistic effects of alcohol and drugs authorized a conviction when the information alleged only intoxication by alcohol. *See Sutton*, 899 S.W.2d at 683. Sutton claimed his intoxication was due to the drug Klonopin. A forensic expert testified that Klonopin caused drowsiness, and that drinking two beers in conjunction with the ingestion of Klonopin would very likely make an individual "appear to be intoxicated on alcohol." *Id.* The court held that *Heard* was dispositive; the charge "when read carefully, allowed conviction only if the jury found that appellant had been intoxicated *with alcohol*, either alone or in combination with a drug that made him *more susceptible to the alcohol*." *Id.* (emphasis in original). The court emphasized that the charge still required the jury to find that the intoxication resulted from

---

**6.** We note that in *Kessler* the court charged the jury that if they believed from the evidence that appellant was intoxicated from the

use of amytal, or if they had a reasonable doubt thereof, to acquit her. *Kessler*, 125 S.W.2d at 309.

alcohol, and thus did not extend beyond the information. *See id.*

This line of cases supports the State's contention that an instruction on synergy does not necessarily allow conviction of DWI on an impermissible definition of intoxication. The State urges that *Sutton* and its predecessors control the disposition of this case. We note, however, two important differences between this precedent and the instant cause: (1) the defendant in the instant cause alleged that fatigue, not drugs or other substances, caused his impairment; and (2) each of the above cases contained some expert testimony linking alcohol and the additional substance which combined to produce a synergistic effect upon the defendant's intoxication, whereas the instant cause lacks any evidence in the record supporting the assumption that fatigue enhances the effects of alcohol. We believe these distinctions to be significant and will address them in order.

### The Statutory Categories of Intoxication

■ The Penal Code, in setting out what we have called the "subjective" standard, defines intoxication as a departure from the normal use of one's physical or mental faculties resulting from the introduction into the body of: (1) alcohol; (2) a controlled substance; (3) a drug; (4) a dangerous drug; (5) a combination of two or more of those substances; or (6) any other substance. *See* Tex. Penal Code Ann. § 49.01(2)(A) (West 1994). Thus, in order for one to be intoxicated, the statute clearly requires that one of the above substances, *or a combination thereof,* be introduced into the body. The statute specifically ties the intoxication standard under section 49.01(2)(A) to the listed individual substances, or the synergistic effect caused by the combination of two or more of those substances; fatigue, or any other purely natural deterioration of the body, is not listed.

The State relies on *Sutton* and its predecessors to justify the disputed instruction. The instruction in *Sutton* provides in relevant part:

> You are further instructed that if a Defendant indulges in the use of Klonopin to such an extent that he thereby makes himself more susceptible to the influence of alcohol than he otherwise would have been, and by reason thereof becomes intoxicated from recent use of alcohol, he would be in the same position as though his intoxication was produced by the use of alcohol alone.

*Sutton,* 899 S.W.2d at 684. The instruction in the instant cause and the one in *Sutton* are virtually identical; the instant instruction merely replaces "indulges in the use of Klonopin" with "allows his physical condition to deteriorate." The significance lies in the nature of the change; the instant instruction substitutes a natural deterioration of the body with a substance specifically provided for in the statutory definition of intoxication. We believe that the statute circumscribes the parameters of a "synergistic effect" instruction. Consequently, we conclude that the instruction, as given, falls outside that permissible by statute.

### Comment on the Weight of the Evidence

■ Atkins contends that, in the absence of any testimony establishing a causal connection between fatigue and alcohol that creates a synergistic effect on intoxication, it was error to give a "synergistic effect" instruction. This is an argument that is difficult to dispel. As previously mentioned, the instant cause is distinct from the *Sutton/Kessler* line of cases because there exists no expert testimony in the record linking fatigue with alcohol to establish the synergistic effects upon intoxication.[7] There exists in the record tes-

7. Each of the State's cited cases contains expert testimony regarding the synergistic effects of alcohol and a specific drug or chemical: *Kessler,* 125 S.W.2d at 309 (doctor); *Miller,* 341 S.W.2d at 441 (toxicologist); *Heard,* 665 S.W.2d at 489 (doctor); and *Sutton,* 899 S.W.2d at 684 (forensic expert). Expert testimony is generally required on issues of causation except where determination of an issue falls plainly within the knowledge

timony of fatigue; similarly, there exists evidence of Atkins's consumption of alcohol. There is an absence, however, of any testimony on the synergistic effect between the two.

The instruction as given sets up a conditional; *if* the defendant allowed his physical condition to deteriorate, *and* by this becomes intoxicated through the introduction of alcohol, *then* the defendant is in the same position as if his intoxication was produced by alcohol alone. The instruction itself is quite neutral. It never mentions fatigue, only *possible* physical deterioration. And, it requires intoxication through the introduction of alcohol, as provided by statute.

This is not, however, the same as saying the disputed instruction actually aided the jury in making its determination. The disputed instruction was unnecessary and failed to clarify matters for the jury. Worse, by referring to Atkins's physical condition in the jury charge, the trial court authorized the State to discuss the alleged synergistic effects of fatigue upon intoxication in its closing argument. This would be an unremarkable development should some scientific testimony have linked the two at trial, but the record is devoid of any testimony establishing such a synergistic effect between fatigue and alcohol. Therefore, the State was allowed to engage in argument and speculation beyond any evidence contained in the record, attempting to convince a lay jury from a "common knowledge" point of view. This borders on

an impermissible comment on the weight of the evidence.[8]

Because we believe the "synergistic effect" instruction as given falls outside the description of substances, or combination thereof, provided by statute, and because we believe this instruction borders on a comment on the weight of evidence, we disapprove of the instruction as given under the facts presented in this case. We conclude that the trial court erred in charging the jury with the instruction as given on the synergistic effect of fatigue and alcohol on intoxication.

## Harm Analysis

■ When reviewing error in a jury charge, article 36.19 of the Code of Criminal Procedure contains the standards for both fundamental error and ordinary reversible error. *See* Tex.Code Crim. Proc. Ann. art. 36.19 (West 1981). If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is "calculated to injure the rights of defendant." This means no more than *some* harm must exist to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless. On the other hand, if no proper objection was made at the trial and the defendant must claim that the error was "fundamental," the judgment will be reversed only if the error is so egregious and created such harm that the defendant "has not had a

---

possessed by ordinary laypersons. *See Hood v. Phillips*, 554 S.W.2d 160, 164 (Tex.1977) ("unless the mode or form of treatment is a matter of common knowledge or is within the experience of the layman, expert testimony will be required to meet this burden of proof"); *Flores v. Center for Spinal Evaluation and Rehabilitation*, 865 S.W.2d 261, 264 (Tex.App.—Amarillo 1993, no writ) ("proximate cause cannot be established by mere guess or conjecture, but must be proved by evidence of probative force").

**8.** Article 36.14 of the Texas Code of Criminal Procedure, entitled Charge of Court, states in relevant part:

Subject to the provisions of article 36.07 in each felony case and in each misdemeanor case tried in a court of record, the judge shall, before the argument begins, deliver to the jury, except in pleas of guilty, where a jury has been waived, a written charge distinctly setting forth the law applicable to the case; *not expressing any opinion as to the weight of the evidence,* not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury.

Tex.Code Crim. Proc. Ann. art. 36.14 (West 1981) (emphasis added).

fair and impartial trial." *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App. 1984).

▮ Atkins objected to the jury charge at trial on grounds similar to those explicated in his points of error before this Court. Therefore, according to *Almanza,* we must reverse the conviction upon a finding of some harm attributed to error in the charge. *See id.* The actual degree of harm must be assayed *in light of the entire jury charge, the state of the evidence,* including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Id.* (emphasis added).

To determine harm in the instant cause under the *Almanza* standard, we will first review the court's charge to the jury. We initially note that the disputed instruction requires that intoxication be found *by the introduction of alcohol into the body,* it just disallows a claim of physical deterioration as a complete defense. Furthermore, in reviewing the entire charge, the court clearly states the terms of the statute under which Atkins was charged, and defines the nature of "intoxication" necessary for conviction strictly in terms of alcohol. The charge includes a statement of the law: "Our statutes provide that any person who drives or operates an automobile or any other motor vehicle in any public place in this State while such person is intoxicated shall be guilty of Driving While Intoxicated." The charge also includes the following definitions:

> "*Intoxicated*" means not having the normal use of physical or mental faculties by reason of the introduction of alcohol into the body.
> "*Normal Use*" means the manner in which the normal non-intoxicated person would be able to use his faculties.
> "*Public place*" means any place to which the public or a substantial group of the public has access and includes, but is not limited to streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops.

Taken as a whole, the charge clearly states the proper statutory standard to be applied by the jury.

We will next review the state of the evidence. Because no objectively verifiable standard was available to determine whether Atkins was intoxicated, the jury had to weigh the available evidence, which included evidence of Atkins's physical condition. In fact, Atkins himself put his physical condition at issue in the trial by attempting to explain away his erratic behavior as a result of extreme fatigue. The jury was free to accept Atkins's argument that his behavior, which may have resembled intoxication, was actually fatigue. We have already stated that the jury charge, when read as a whole, correctly instructed the jury on the statutory requirements for conviction. The instruction did not preclude the jury from finding that fatigue, rather than alcohol, caused Atkins's aberrant behavior. However, the jury was also free to make, and did make, the opposite conclusion.

We further note that the record contained undisputed evidence of intoxication which could not be explained away by Atkins's claim of fatigue. Atkins admitted drinking multiple beers at a poker party. Moreover, his fatigue cannot explain his failure of the HGN test, the odor of alcohol in the car and on his breath, his bloodshot eyes, or other incriminating evidence apparent at the time of the stop. Even believing Atkins to be fatigued, and that the fatigue caused some of the aberrant behavior as attested to by Atkins's witnesses, the jury had ample evidence of intoxication to convict Atkins for DWI.

**CONCLUSION**

Though we believe the instruction as given was error, *Almanza* cautions us to look to the entire jury charge and the state of the evidence. As we have earlier explained, the statute and its relevant defini-

tions were clearly included in the charge, such that the jury was twice charged that a conviction must be based upon the ingestion of alcohol *alone*. Furthermore, we look to the evidence, which includes many indicia of intoxication not explained away by Atkins's claim of fatigue. We therefore hold that, even though the trial court erred in instructing the jury on the synergistic effect of fatigue and alcohol on intoxication, the error was ultimately harmless. We affirm the conviction.