# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00085-CR

**Timmie Lynn Smith, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY, NO. 676097, HONORABLE NANCY WRIGHT HOHENGARTEN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Timmie Lynn Smith of the misdemeanor offense of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04 (West 2003). The trial court assessed punishment at two years' probation and a $2,000 fine. In three issues on appeal, Smith asserts that the trial court erred in denying his motion to suppress, alleges that a police officer was not qualified to testify about a field sobriety test, and claims error in the jury charge. We will affirm.

## BACKGROUND

The facts of this case are uncontested on appeal. The jury heard evidence that at approximately 2:30 a.m. on July 23, 2004, Officer Robert Hester observed Smith driving erratically and initiated a traffic stop. Hester testified that as he approached the vehicle, he saw an open beer bottle in the vehicle console's cup holder. Hester also observed Smith remove the bottle and try to

hide it under the passenger seat. When Hester reached the vehicle, he noticed that Smith had a strong smell of alcohol on his breath and "red bloodshot" eyes.

At this point, Hester decided to call Officer Emily Abbink to conduct field sobriety tests on Smith. Hester testified that Abbink was a "rookie," and that he wanted her to receive some on-the-job training. Additionally, as shift supervisor that night, Hester needed to "remain on the street" in order to "supervise the rest of the officers on the shift." There was evidence in the record, in the form of a videotaped recording of the stop and testimony from Officer Hester, that approximately twenty minutes elapsed from the time Hester stopped Smith to the time Abbink arrived at the scene, and that approximately six additional minutes elapsed from the time Hester briefed Abbink on the situation to the time Abbink began her investigation.

Abbink testified that, upon arrival, she first asked Smith to step out of his vehicle. In addition to smelling alcohol on Smith's breath, Abbink noticed that Smith "swayed while walking." Abbink explained that Smith told her that he suffered from a back injury and that he had taken Vicodin, a pain killer, and a generic form of Soma, a muscle relaxer, earlier in the evening. Officer Roman Santos, who was working with Abbink that night, testified that Smith told him that he was not allowed to drink alcohol while taking the muscle relaxers. However, according to Abbink, Smith admitted to her that, between 8:00 and 9:30 that night, he had consumed two twelve-ounce bottles of beer. Abbink testified that, based on her observations of Smith, she believed that he had consumed more than two beers.

Abbink further testified about the field sobriety tests she performed on Smith, including the HGN test, the walk-and-turn test, and the one-legged-stand test. Based

on the results of these tests, Abbink concluded that Smith was intoxicated and arrested him. At the police station, an intoxilyzer test revealed that Smith's blood-alcohol content was .14, well above the .08 legal limit.

Smith also testified. Smith admitted to drinking two beers and taking Vicodin and a generic form of Soma on the night he was arrested. Smith testified that he took the drugs at approximately 6:30 p.m. and drank the beers between 8:00 p.m. and 9:30 p.m.

The jury also heard evidence about the intoxicating effects of painkillers and muscle relaxers. Officer Ryan Herring, an "Intoxilyzer operator" and "drug recognition expert" for the Austin Police Department, testified that a "slim" number of DWI cases he had worked on involved people who had become intoxicated due to painkillers and muscle relaxers. Herring further testified that, as a "rough estimate," muscle relaxers can be active in a person's system for between four to six hours. However, when asked if a drug that was taken at 6:30 p.m. would no longer be active at 12:30 a.m., Herring testified that it "depend[s] on the dosage" and the "actual way the drug is made." Herring explained that the drug could be "designed to slowly release over the course of so many hours or it could be that it's designed to go into your system and become active all at once."

Additionally, Herring testified to the "synergistic effect" between drugs and alcohol, explaining that "one beer plus one muscle relaxer could be the same as two, three, four, five beers, depending on the dosage of the medication and the . . . specific type of medication." Herring further testified that drugs can have either a "multiplier" or an "additive" effect on alcohol consumption.

The jury convicted Smith of driving while intoxicated, and he was sentenced to two years' probation. This appeal followed.

3

**DISCUSSION**

**Motion to suppress**

In his first issue, Smith asserts that the trial court erred in denying his motion to suppress. Prior to trial, Smith argued that the length of time between his initial traffic stop and his arrest was unreasonable and rendered the investigative detention illegal. The trial court denied Smith's motion.

In reviewing a ruling on a motion to suppress evidence, the appellate court will usually have facts established by the trial court to which the law must be applied. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). Because the trial court is the sole trier of fact but the appeals court must determine the law, the trial court's ruling on a motion to suppress will be reviewed using a bifurcated standard. *Id*. at 855-56. In this review, we give almost total deference to the trial court's determination of the facts but review the court's application of search and seizure law de novo. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). Here, the trial court did not make explicit findings of fact, so we review the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported by the record. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002).

Smith concedes that the initial traffic stop was lawful and that Officer Hester was justified in conducting an investigative detention. Smith argues, however, that the detention "became unlawful when, rather than diligently pursuing the investigation, as he

4

easily could have, Hester decided to extend the period of detention to await the arrival of a rookie officer to conduct the investigation."

An investigative detention in which the subject is not free to leave is a seizure for purposes of the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution. *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). Detentions during traffic stops constitute seizures and must be reasonable. *Whren v. United States*, 517 U.S. 806, 809 (1996). Smith claims that the detention became unreasonable at some point during the approximately twenty-six minutes between the initial stop and the beginning of Officer Abbink's investigation.

Texas courts recognize certain factors in judging the reasonableness of an investigative detention. An investigative detention must be reasonably related in scope to the circumstances that originally justified the interference. *Davis v. State*, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). It must be temporary and last no longer than necessary to effectuate the purposes of the stop. *Florida v. Royer*, 460 U.S. 491, 500 (1983); *Davis*, 947 S.W.2d at 245.

Although the length of the detention may render a traffic stop unreasonable, there is no rigid bright-line time limitation. *United States v. Sharpe*, 470 U.S. 675, 685-86 (1985). Instead, common sense and ordinary human experience must govern over rigid criteria. *Id*. at 685. The reasonableness of the detention depends on whether the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly, during which time it was necessary to detain the defendant. *Id*.; *Balentine*, 71 S.W.3d at 770-71. We note that in *Sharpe*, the

5

Supreme Court held that an approximately twenty-minute delay, six minutes shorter than the length of the delay in this case, was not per se unreasonable. *See Sharpe*, 470 U.S. at 688 (1985).

Smith argues that Hester could have performed the field sobriety tests himself. Therefore, according to Smith, by waiting for another officer to arrive and perform the tests, Hester did not diligently pursue a means of investigation likely to quickly dispel or confirm his suspicions. In response, the State argues that the delay "served important law enforcement purposes."

Although "the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion," courts should also "consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." *Id*. at 685. Reasonable purposes include investigation, maintenance of the status quo, and officer safety, considering the totality of the circumstances. *Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997).

Although Hester testified that he could have conducted field sobriety tests on his own, "the key inquiry is not whether a less intrusive alternative was available to law enforcement officials, but whether the police acted unreasonably in failing to choose that alternative." *Hartman v. State*, 144 S.W.3d 568, 574 (Tex. App.—Austin 2004, no pet.) (citing *Sharpe*, 470 U.S. at 687). Hester testified that he had been a police officer for thirteen years and that, on the night in question, he was the supervisor for the late-night shift between the hours of 9:00 p.m. and 7:00 a.m. Hester was supervising six or seven other officers and two trainees at that time. Hester further testified that a DWI arrest typically takes between two to three hours "just to do the average paperwork."

6

Therefore, if Hester had performed the field sobriety tests and arrested Smith on his own, he would have been unavailable to assist other officers for a significant percentage of his shift. Hester testified that, by calling in another officer to make the arrest, he was following "standard operating procedure."

Based on the circumstances of this case, we conclude that it was not unreasonable for an experienced officer who "supervise[s] the rest of the officers on the shift" to call in another officer to conduct field sobriety tests in a routine DWI investigation so that, as shift supervisor, he may "remain on the street" in case a more serious matter requires his attention. "It is important to allow authorities to graduate their responses to the demands of a particular situation." *Id*. (citing *United States v. Place*, 462 U.S. 696, 709 n.10 (1983)).

For the reasons discussed above, we hold that the trial court did not abuse its discretion in finding that Hester's decision to call another officer to conduct the DWI investigation was reasonable. We overrule Smith's first issue.

**Officer Abbink's qualifications**

In his second issue, Smith complains that the trial court erred in admitting Officer Abbink's testimony regarding the HGN test because there was insufficient evidence that she was qualified to give expert testimony regarding that test.[1] We review the trial court's ruling on the

---

[1] HGN stands for "horizontal gaze nystagmus." Nystagmus is defined as an "involuntary rapid oscillation of the eyeballs in a horizontal, vertical, or rotary direction." *Emerson v. State*, 880 S.W.2d 759, 765 (Tex. Crim. App. 1994). Horizontal gaze nystagmus is a variety of nystagmus that occurs when an individual's eyes are deviated to the lateral extreme. *Id*. The effect of alcohol on nystagmus, specifically HGN, is well documented. *Id*. at 766.

admissibility of expert testimony for abuse of discretion. *Russeau v. State*, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005).

The court of criminal appeals has held that

> For testimony concerning a defendant's performance on the HGN test to be admissible, it must be shown that the witness testifying is qualified as an expert on the HGN test, specifically concerning its administration and technique. In the case of a police officer or other law enforcement official, this requirement will be satisfied by proof that the officer has received practitioner certification by the State of Texas to administer the HGN.

*Emerson v. State*, 880 S.W.2d 759, 769 (Tex. Crim. App. 1994). Smith claims that the State made no showing that Abbink received practitioner certification by the State of Texas. We disagree.

On voir dire by defense counsel, although Abbink testified that she was certified, she expressed uncertainty about whether she possessed an actual "certificate":

Q. Officer Abbink, you said you were certified on July the 23rd of '04?

A. Yes, sir.

Q. You had a certificate at that time?

A. Whatever the academy gives out at that time. I believe it was a certificate upon graduation that they make sure that we are certified in every aspect.

Q. My question is on July 23rd of '04, did you possess a certificate certifying you in the field sobriety tests?

A. I—I can't answer that. I don't know. I assumed I had been presented one at—by the academy.

Q. But you don't know for sure?

A. No, sir.

8

Smith then objected to Abbink's testimony, arguing that the record did not demonstrate proper certification. However, before ruling on the objection, the trial court allowed the State to clarify Abbink's responses:

Q. Now, earlier you told me that you were certified to administer the HGN test?

A. Yes.

Q. Okay. And you were told at the academy that you had completed the certification process?

A. Yes.

Q. Did you do the tests on the 35 test subjects in the academy —

A. Yes, sir.

Q. — in order to receive your practitioner certification?

A. Yes.

Q. Okay. Now, as the Judge just pointed out, when you answered Mr. Bass's question, are you referring to the actual physical possession of the certificate?

A. Yes, sir.

Q. Okay. But on the date in question, you were, in fact, certified?

A. That is correct.

The trial court then allowed defense counsel to ask Abbink one more question:

Q. On the day—on July 23rd, '04, who were you certified by?

A. I believe it's the National Highway Transportation Safety Administration [NHTSA], or TEEX, and I can't remember who that—what that stands for, but that's who certifies the peace officers.

9

Q. So that would have been a national certificate?

A. Yes, sir.

Q. Not a—not certification by the State of Texas?

A. Whatever—to be honest with you, I—I believe it is a state—or a national certification.

Based on this testimony, Smith again objected to Abbink's qualifications, arguing that "*Emerson* requires certification by the State of Texas or extensive experience." In response, the State explained that Abbink "probably got her certificate from Texas A&M Extension Services, and it's the NHTSA—the NHTSA sponsors or promulgates the manual under which the field sobriety tests are taught. I don't think NHTSA actually issues the certificate. It's issued by the extension service through the Texas Law Enforcement Commission." The trial court overruled Smith's objection, and Abbink was permitted to testify.

Despite Abbink's difficulty in relating the details surrounding her certification, we conclude that the State made an adequate showing that Abbink was qualified to administer the HGN test. Abbink repeatedly testified that she was certified. Furthermore, Abbink testified that she performed the HGN test on thirty-five test subjects in the police academy in order to receive her practitioner certification. *See* Tex. R. Evid. 702 (witness may be qualified as expert by "knowledge, skill, experience, training, or education"); *see also Smith v. State*, 65 S.W.3d 332, 344 (Tex. App.—Waco 2001, no pet.) (holding that if officer is qualified by other training or experience, certification is not necessary); *Kerr v. State*, 921 S.W.2d 498, 502 (Tex. App.—Fort Worth 1996, no pet.) (same). On this record, we hold that the trial court did not

abuse its discretion in finding that Abbink was qualified to testify about the HGN test and its results. We overrule Smith's second issue.

**Jury instructions**

In his third issue, Smith claims that the court's charge instructed the jury to convict Smith on a theory that was not supported by the evidence. Specifically, Smith contends that there was no evidence in the record that he was intoxicated by anything other than alcohol. The court's charge authorized conviction if the jury determined that Smith was driving while intoxicated "by reason of the introduction of alcohol, a controlled substance, a drug, or a combination of two or more of those substances into the said defendant's body, or when he had an alcohol concentration of at least 0.08." This charge was submitted to the jury over Smith's timely objection.

The trial court's charge to the jury must set forth "the law applicable to the case." Tex. Code Crim. Proc. Ann. art. 36.14 (West 2006). "It is not enough for the charge to merely incorporate the allegation in the charging instrument. Instead, it must also apply the law to the facts adduced at trial." *Gray v. State*, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004). A jury charge that fails to accurately instruct the jury on the law and its application is erroneous. *Id*. An error in the jury charge is generally reviewed under an abuse of discretion standard. *Guzman*, 955 S.W.2d at 89.

The law applicable to this case is the statutory definition of intoxication. The penal code defines intoxication as not having the normal use of one's physical or mental faculties by reason of the introduction into the body of: (1) alcohol; (2) a controlled substance; (3) a drug; (4) a dangerous drug; (5) a combination of two or more of those substances; or (6) any other substance. *See* Tex. Penal Code Ann. § 49.01(2)(A) (West 2003). Thus, in order for one to be intoxicated, the

11

statute clearly requires that one of the above substances, *or a combination thereof*, be introduced into the body. *Atkins v. State*, 990 S.W.2d 763, 767 (Tex. App.—Austin 1999, pet. ref'd). The statute specifically ties the intoxication standard under section 49.01(2)(A) to the listed individual substances or the synergistic effect caused by the combination of two or more of those substances. *Id*. The instruction given by the trial court mirrors the statutory definition of intoxication. *See* Tex. Penal Code Ann. § 49.01(2).

Based on the evidence in the record, we find that the trial court did not abuse its discretion in charging the jury on the statutory definition of intoxication. Although there was evidence in the record that Smith's intoxication may have been from the consumption of alcohol alone, there was also evidence that Smith took other drugs prior to consuming alcohol. Smith testified that at approximately 6:30 p.m. on the night he was arrested, he consumed both a prescription muscle relaxer and a prescription painkiller. Smith further admitted to consuming two beers between 8:00 p.m. and 9:30 p.m., less than three hours after taking the medication. The jury also heard evidence that Smith was aware that he should not consume alcohol while taking muscle relaxers.

Additionally, the jury heard evidence that muscle relaxers and painkillers can have an intoxicating effect. Although the State's drug recognition expert testified that such drugs are usually only active for "four to six hours," Herring qualified this testimony, stating that a drug's active life depends on the dosage and "the actual way that the drug is made." According to Herring, certain drugs could be "designed to slowly release over the course of so many hours." Additionally, Herring testified to the "synergistic effect" between medication and alcohol.

Once the jury heard evidence that Smith had taken prescription medication less than three hours before consuming alcohol and that the medication could increase the intoxicating effect of alcohol, the portions of the statutory definition referencing the effects of the "combination" of drugs and alcohol became "law applicable to the case." *See Sutton v. State*, 899 S.W.2d 682, 685 (Tex. Crim. App. 1995). Therefore, it was not an abuse of discretion for the trial court to provide the jury with an instruction on intoxication that was not limited to alcohol and that mirrored the complete statutory definition of intoxication in the penal code. *See* Tex. Penal Code Ann. § 49.01(2)(A); *Gray*, 152 S.W.3d at 133. We overrule Smith's third issue.

## CONCLUSION

Having overruled Smith's issues on appeal, we affirm the judgment of the trial court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: March 7, 2007

Do Not Publish

13