**Reversed and Rendered in Part, Reversed and Remanded in Part, and Substitute Majority and Dissenting Opinions filed July 7, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00706-CR

---

**JOEL NAVARRO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 15
Harris County, Texas
Trial Court Cause No. 1836127**

---

## S U B S T I T U T E   D I S S E N T I N G   O P I N I O N [1]

When police responded to a single-vehicle accident, they found the vehicle's two occupants — appellant and his girlfriend — in the middle of the freeway. Both were injured. A motorist reported that he had seen their truck veer into the highway's median. The truck flipped three times, ejecting the girlfriend and

---

[1] The dissenting opinion dated May 28, 2015, is withdrawn, and this opinion is issued in its place.

leaving her unconscious. At the scene, appellant admitted to a police officer that he sat down behind the wheel of the truck and turned the key. Appellant later admitted to having consumed five beers before getting behind the wheel. The jury convicted appellant of driving while intoxicated ("DWI"). Today, the court reverses the conviction.

In an apparent first in the history of Texas jurisprudence, the majority holds the trial court erred in defining a term for the jury using the same unambiguous language the Texas Legislature used to define the term in the statute establishing the charged offense. After finding error, the majority also finds harm, despite overwhelming evidence that appellant was driving while intoxicated. Seeing neither error nor harm, I respectfully dissent.

## The Jury Charge

In the jury charge for the guilt/innocence phase, the trial court defined "alcohol concentration" as "the number of grams of alcohol per 100 milliliters of blood." Appellant objected and requested the trial court to insert the word "whole" so that the definition would read "the number of grams of alcohol per 100 milliliters of whole blood." The trial court overruled appellant's objection and refused to submit the definition in the form appellant requested.

Article 36.14 of the Code of Criminal Procedure requires a trial court to provide a written jury charge distinctly setting forth the law applicable to the case.[2] The definition the trial court submitted tracks the plain language the Texas Legislature chose to define "alcohol concentration" in the DWI statute.[3] In this

---

[2] *See* Tex. Code Crim. Proc. art 36.14 (West, Westlaw through 2013 3d C.S.); *Casey v. State*, 215 S.W.3d 870, 886 (Tex. Crim. App. 2007).

[3] *See* Tex. Penal Code Ann. § 49.01(1) (stating that "'[a]lcohol concentration' means the number of grams of alcohol per . . . 100 milliliters of blood") (West, Westlaw through 2013 3d C.S.).

definition, the trial court set forth the law applicable to the case.[4]  A jury charge that tracks the language of a particular statute is a proper charge on the statutory issue.[5]

*No Error*

Citing a leading dictionary and a medical textbook, the majority explains that the plain meaning of the term "blood" is whole blood and concludes the trial court erred in refusing to substitute the term "whole blood" for the term "blood" because the charge had a "variable" meaning in the eyes of the jury.  The majority concludes the charge had a variable meaning because the State's expert witness did not know whether the term "blood" meant "whole blood" in a legal context.  The expert did not testify that the term meant blood plasma.  The expert explained that blood plasma and whole blood are different in that the Houston Police Department crime lab uses whole blood if it is available and converts blood plasma into whole blood if whole blood is not available.  In response to a question asking if the expert was aware whether Texas law required whole blood or blood plasma, the expert stated:

> Without -- we report all values as the blood alcohol whole blood equivalent.  I know we do run serum and plasma and then convert them to the whole blood equivalent and that is standard practice through the United States.  I'm not going to go off and venture to say what Texas [l]aw specifically delineates in their statutes.

---

[4] *See Casey*, 215 S.W.3d at 886–87.

[5] *See Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994).  Citing to two opinions, the majority states that the jury should be given the definition of a term that has acquired a technical or established legal meaning.  *See Medford v. State*, 13 S.W.3d 769, 771–72 (Tex. Crim. App. 2000); *Middleton v. State*, 125 S.W.3d 450, 454 (Tex. Crim. App. 2003) (plurality op.).  But, in neither did the Court of Criminal Appeals hold the trial court abused its discretion in not charging the jury on the definition of a term with a technical or established legal meaning.  In any event, neither the majority nor the parties cite any cases holding that "blood" is either a technical term or a term with an established legal meaning.

The majority concludes the State obfuscated the meaning by objecting to any suggestion that whole blood is the sole unit of measurement under the statute. But, the trial court overruled those objections.

Neither appellant nor the majority cite, and research has not revealed, any Texas precedent holding that the trial court's definition of "alcohol concentration" is erroneous or that appellant's proffered definition is required. Nor has research revealed any Texas precedent holding that a trial court errs in submitting a jury charge that tracks the applicable Texas statute. This court should not do so. Instead, the court should conclude that the trial court did not err in overruling appellant's objection and refusing to submit the definition in the form appellant requested.[6] Because the trial court did not err, there is no need to conduct a harm analysis.

*No Harm*

Even presuming for the sake of argument that the trial court erred in rejecting appellant's proposed jury charge, the error is harmless. If a jury charge contains error, an appellate court must analyze that error to determine whether it is harmful.[7] Because appellant timely objected to the charge, this court should reverse only if appellant suffered "some harm."[8] In assessing harm under this standard, the court is to weigh (1) the jury charge as a whole; (2) the arguments of counsel; (3) the entirety of the evidence; and (4) any other relevant factors present in the record.[9] Even though the "some harm" standard is a low threshold, to find

---

[6] *See Casey*, 215 S.W.3d at 886; *Riddle*, 888 S.W.2d at 8.

[7] *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).

[8] *See id.*

[9] *See Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008).

4

"some harm" the reviewing court must find actual harm, rather than just theoretical harm.[10] Neither party bears the burden on appeal to prove harm or harmlessness.[11]

In assessing the jury charge as a whole, the majority notes that the charge required the jury to find appellant guilty if the jury determined appellant was intoxicated under either an impairment theory or a per se theory. The majority finds "some harm" from the charge because the jury may have disregarded the trial court's unambiguous instructions and found that appellant was intoxicated based solely on a finding that appellant's blood plasma had an alcohol concentration of 0.08 or more. In analyzing counsel's closing arguments, the majority notes the State may have emphasized the alleged jury-charge error. As the majority acknowledges, however, in the balance of appellant's argument he argues he was not the driver—an argument the jury rejected—and that the evidence did not show he was impaired under the impairment theory of intoxication.

The State presented substantial evidence that appellant was intoxicated under both per se and impairment theories. The alcohol concentration of appellant's blood plasma was .158. The expert testified that, on average, 16 percent of whole blood is consumed by cellular material. According to the expert, blood plasma does not contain that material, which means the alcohol concentration of blood plasma, on average, is 16 percent higher than the alcohol concentration of whole blood. Using this calculation, the expert converted appellant's plasma-alcohol concentration of .158 to a whole-blood-alcohol concentration of .132, well above 0.08.[12]

---

[10] *Id.*

[11] *Id.* at 462.

[12] Significantly, to the extent the jury was relying upon the alcohol-concentration part of the definition of "intoxicated," the jury was asked to determine whether the evidence proved beyond

5

The majority emphasizes the expert's testimony that the percentage of a whole blood cell consumed by cellular material can vary under certain circumstances, including blood cancer. The expert noted that in the case of leukemia, 50 percent to 60 percent of an affected individual's whole blood could contain cellular material. The majority notes that if appellant's blood-cell composition mirrored that of a cancer patient, then appellant's whole-blood-alcohol concentration would have been .079, just under the legal limit of .08. But, appellant's blood composition did not mirror a leukemia patient's blood composition.

The record evidence contains appellant's medical records.[13] Among them is a hematology report.[14] This report contains a complete blood count with reference ranges. The report shows that appellant's red blood cell count, hemoglobin level, and platelet count were all within the reference range and that only appellant's white blood cell count was outside of the reference range. Appellant's hematologic history is checked as "normal." Appellant's medical records contain no notation of a leukemia diagnosis or any other blood or bone marrow disorder. This evidence weighs against the conclusion that appellant's plasma blood-alcohol concentration was 50 percent to 60 percent higher than his whole blood-alcohol

---

a reasonable doubt that the blood-alcohol concentration was .08 or greater; the jury was not asked to make any determination regarding an alcohol concentration of 0.15 or higher.

[13] The trial court advised the jury that exhibits would be delivered to the jury room if requested. This instruction accords with Texas Code of Criminal Procedure article 36.25, which provides that exhibits must be furnished to the jury upon the jury's request. *See* Tex. Code Crim. Proc. Ann. art. 36.25 (West, Westlaw through 2013 3d C.S.).

[14] The majority speculates about whether the medical records went into the jury room and whether the jury understood what the hematology report meant. The relevant inquiry is whether the report was part of the evidence the jury could consider. It was. In determining harm under *Almanza*, this court must consider the entire record. *See Arrington v. State*, 451 S.W.3d 834, 840–44 (Tex. Crim. App. 2015) (reversing court of appeals for finding error harmful without considering entire record).

concentration. Considering this evidence in light of the expert's testimony that, on average, an individual's plasma blood-alcohol concentration is 16 percent higher than the individual's whole blood-alcohol concentration, leads to the conclusion that appellant's whole blood-alcohol concentration was over the legal limit of .08. Under a per se theory, the evidence supporting appellant's conviction is strong.

The evidence also shows appellant was intoxicated under the impairment theory.[15] A paramedic who arrived on the accident scene testified that appellant told him (1) appellant had consumed four alcoholic beverages and (2) appellant was the driver of the truck. Medical records admitted into evidence include notes from a social worker. According to the notes, appellant told the social worker he had been drinking before the accident; appellant placed his consumption count at five beers rather than the four beers he had told the paramedic.[16] Evidence shows that appellant was driving the truck on the interstate highway in light traffic and good conditions when the truck veered suddenly and sharply into a concrete barrier with enough force to roll the truck three times. Other evidence shows the circumstances of the single-vehicle crash suggested it was an alcohol-related event based on appellant's admission to having consumed four or five beers before the crash as well as appellant's behavior at the scene, which included lying to police officers.[17] There are no other relevant factors.[18]

Weighing the jury charge as a whole, the arguments of counsel, the evidence

---

[15] *See Butler v. State*, 981 S.W.2d 849, 857–58 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (holding no harm resulted from charge error relating to one theory of guilt because evidence supported guilt under alternate theory).

[16] *See Atkins v. State*, 990 S.W.2d 763, 769 (Tex. App.—Austin 1999, pet. ref'd) (holding jury-charge error harmless in light of evidence the defendant was intoxicated, including admission of drinking multiple beers).

[17] *See id.*

[18] The expert's de minimis calculation errors did not significantly affect the evidence of appellant's whole-blood-alcohol concentration.

presented in the case, and concluding there are no other relevant factors, this court should conclude that any error by the trial court is harmless because of the overwhelming evidence of appellant's guilt.[19]

## Conclusion

The trial court charged the jury in accordance with Texas law. The trial court did not err in refusing appellant's request to add language to the jury charge. Even if the trial court had erred in refusing appellant's request, the error would be harmless because the evidence of appellant's guilt is overwhelming. Therefore, this court should reverse the trial court's judgment and remand this case to the trial court to reform the judgment to reflect a conviction for the Class B misdemeanor under Penal Code section 49.04(a), and to conduct a new punishment hearing.


/s/    Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Christopher and Busby (Christopher, J., majority).
Publish — TEX. R. APP. P. 47.2(b).

---

[19] *See id.*

8