TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00085-CR






Timmie Lynn Smith, Appellant


v.


The State of Texas, Appellee






FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY,

NO. 676097, HONORABLE NANCY WRIGHT HOHENGARTEN, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N

 A jury convicted appellant Timmie Lynn Smith of the misdemeanor offense of
driving while intoxicated. See Tex. Penal Code Ann. § 49.04 (West 2003). The trial court assessed
punishment at two years' probation and a $2,000 fine. In three issues on appeal, Smith asserts that
the trial court erred in denying his motion to suppress, alleges that a police officer was not qualified
to testify about a field sobriety test, and claims error in the jury charge. We will affirm. 


BACKGROUND

 The facts of this case are uncontested on appeal. The jury heard evidence that at
approximately 2:30 a.m. on July 23, 2004, Officer Robert Hester observed Smith driving erratically
and initiated a traffic stop. Hester testified that as he approached the vehicle, he saw an open beer
bottle in the vehicle console's cup holder. Hester also observed Smith remove the bottle and try to
hide it under the passenger seat. When Hester reached the vehicle, he noticed that Smith had a
strong smell of alcohol on his breath and "red bloodshot" eyes.

 At this point, Hester decided to call Officer Emily Abbink to conduct field sobriety
tests on Smith. Hester testified that Abbink was a "rookie," and that he wanted her to receive some
on-the-job training. Additionally, as shift supervisor that night, Hester needed to "remain on the
street" in order to "supervise the rest of the officers on the shift." There was evidence in the record,
in the form of a videotaped recording of the stop and testimony from Officer Hester, that
approximately twenty minutes elapsed from the time Hester stopped Smith to the time Abbink
arrived at the scene, and that approximately six additional minutes elapsed from the time Hester
briefed Abbink on the situation to the time Abbink began her investigation.

 Abbink testified that, upon arrival, she first asked Smith to step out of his vehicle. 
In addition to smelling alcohol on Smith's breath, Abbink noticed that Smith "swayed while
walking." Abbink explained that Smith told her that he suffered from a back injury and that he had
taken Vicodin, a pain killer, and a generic form of Soma, a muscle relaxer, earlier in the evening. 
Officer Roman Santos, who was working with Abbink that night, testified that Smith told him that
he was not allowed to drink alcohol while taking the muscle relaxers. However, according to
Abbink, Smith admitted to her that, between 8:00 and 9:30 that night, he had consumed two twelve-ounce bottles of beer. Abbink testified that, based on her observations of Smith, she believed that
he had consumed more than two beers.

 Abbink further testified about the field sobriety tests she performed on
Smith, including the HGN test, the walk-and-turn test, and the one-legged-stand test. Based
on the results of these tests, Abbink concluded that Smith was intoxicated and arrested him. At the
police station, an intoxilyzer test revealed that Smith's blood-alcohol content was .14, well
above the .08 legal limit.

 Smith also testified. Smith admitted to drinking two beers and taking Vicodin and
a generic form of Soma on the night he was arrested. Smith testified that he took the drugs at
approximately 6:30 p.m. and drank the beers between 8:00 p.m. and 9:30 p.m. 

 The jury also heard evidence about the intoxicating effects of painkillers and muscle
relaxers. Officer Ryan Herring, an "Intoxilyzer operator" and "drug recognition expert" for the
Austin Police Department, testified that a "slim" number of DWI cases he had worked on involved
people who had become intoxicated due to painkillers and muscle relaxers. Herring further testified
that, as a "rough estimate," muscle relaxers can be active in a person's system for between four to
six hours. However, when asked if a drug that was taken at 6:30 p.m. would no longer be active at
12:30 a.m., Herring testified that it "depend[s] on the dosage" and the "actual way the drug is made." 
Herring explained that the drug could be "designed to slowly release over the course of so many
hours or it could be that it's designed to go into your system and become active all at once."

 Additionally, Herring testified to the "synergistic effect" between drugs and alcohol,
explaining that "one beer plus one muscle relaxer could be the same as two, three, four, five beers,
depending on the dosage of the medication and the . . . specific type of medication." Herring further
testified that drugs can have either a "multiplier" or an "additive" effect on alcohol consumption. The jury convicted Smith of driving while intoxicated, and he was sentenced to two
years' probation. This appeal followed. 

DISCUSSION

Motion to suppress

 In his first issue, Smith asserts that the trial court erred in denying his motion
to suppress. Prior to trial, Smith argued that the length of time between his initial traffic stop
and his arrest was unreasonable and rendered the investigative detention illegal. The trial
court denied Smith's motion.

 In reviewing a ruling on a motion to suppress evidence, the appellate court will
usually have facts established by the trial court to which the law must be applied. State v. Ross, 32
S.W.3d 853, 856 (Tex. Crim. App. 2000). Because the trial court is the sole trier of fact but the
appeals court must determine the law, the trial court's ruling on a motion to suppress will be
reviewed using a bifurcated standard. Id. at 855-56. In this review, we give almost total deference
to the trial court's determination of the facts but review the court's application of search and seizure
law de novo. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman v. State,
955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). Here, the trial court did not make explicit findings
of fact, so we review the evidence in the light most favorable to the trial court's ruling and assume
that the trial court made implicit findings of fact supported by the record. Balentine v. State, 71
S.W.3d 763, 768 (Tex. Crim. App. 2002).

 Smith concedes that the initial traffic stop was lawful and that Officer Hester
was justified in conducting an investigative detention. Smith argues, however, that the
detention "became unlawful when, rather than diligently pursuing the investigation, as he
easily could have, Hester decided to extend the period of detention to await the arrival of a rookie
officer to conduct the investigation."

 An investigative detention in which the subject is not free to leave is a seizure for
purposes of the Fourth Amendment to the United States Constitution and article I, section 9 of the
Texas Constitution. Johnson v. State, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). Detentions
during traffic stops constitute seizures and must be reasonable. Whren v. United States, 517
U.S. 806, 809 (1996). Smith claims that the detention became unreasonable at some point
during the approximately twenty-six minutes between the initial stop and the beginning of
Officer Abbink's investigation.

 Texas courts recognize certain factors in judging the reasonableness of an
investigative detention. An investigative detention must be reasonably related in scope to the
circumstances that originally justified the interference. Davis v. State, 947 S.W.2d 240, 244
(Tex. Crim. App. 1997). It must be temporary and last no longer than necessary to effectuate the
purposes of the stop. Florida v. Royer, 460 U.S. 491, 500 (1983); Davis, 947 S.W.2d at 245. 

 Although the length of the detention may render a traffic stop unreasonable, there is
no rigid bright-line time limitation. United States v. Sharpe, 470 U.S. 675, 685-86 (1985). Instead,
common sense and ordinary human experience must govern over rigid criteria. Id. at 685. The
reasonableness of the detention depends on whether the police diligently pursued a means of
investigation that was likely to dispel or confirm their suspicions quickly, during which time it was
necessary to detain the defendant. Id.; Balentine, 71 S.W.3d at 770-71. We note that in Sharpe, the
Supreme Court held that an approximately twenty-minute delay, six minutes shorter than the length
of the delay in this case, was not per se unreasonable. See Sharpe, 470 U.S. at 688 (1985).

 Smith argues that Hester could have performed the field sobriety tests himself. 
Therefore, according to Smith, by waiting for another officer to arrive and perform the tests, Hester
did not diligently pursue a means of investigation likely to quickly dispel or confirm his suspicions.
In response, the State argues that the delay "served important law enforcement purposes."

 Although "the brevity of the invasion of the individual's Fourth Amendment interests
is an important factor in determining whether the seizure is so minimally intrusive as to be
justifiable on reasonable suspicion," courts should also "consider the law enforcement purposes
to be served by the stop as well as the time reasonably needed to effectuate those purposes."
Id. at 685. Reasonable purposes include investigation, maintenance of the status quo, and officer
safety, considering the totality of the circumstances. Rhodes v. State, 945 S.W.2d 115, 117
(Tex. Crim. App. 1997).

 Although Hester testified that he could have conducted field sobriety tests on his own,
"the key inquiry is not whether a less intrusive alternative was available to law enforcement officials,
but whether the police acted unreasonably in failing to choose that alternative." Hartman v. State,
144 S.W.3d 568, 574 (Tex. App.--Austin 2004, no pet.) (citing Sharpe, 470 U.S. at 687). Hester
testified that he had been a police officer for thirteen years and that, on the night in question, he was
the supervisor for the late-night shift between the hours of 9:00 p.m. and 7:00 a.m. Hester was
supervising six or seven other officers and two trainees at that time. Hester further testified that a
DWI arrest typically takes between two to three hours "just to do the average paperwork." 
Therefore, if Hester had performed the field sobriety tests and arrested Smith on his own, he
would have been unavailable to assist other officers for a significant percentage of his shift. 
Hester testified that, by calling in another officer to make the arrest, he was following
"standard operating procedure."

 Based on the circumstances of this case, we conclude that it was not unreasonable for
an experienced officer who "supervise[s] the rest of the officers on the shift" to call in another officer
to conduct field sobriety tests in a routine DWI investigation so that, as shift supervisor, he may
"remain on the street" in case a more serious matter requires his attention. "It is important to allow
authorities to graduate their responses to the demands of a particular situation." Id. (citing United
States v. Place, 462 U.S. 696, 709 n.10 (1983)).

 For the reasons discussed above, we hold that the trial court did not abuse its
discretion in finding that Hester's decision to call another officer to conduct the DWI investigation
was reasonable. We overrule Smith's first issue.

Officer Abbink's qualifications

 In his second issue, Smith complains that the trial court erred in admitting Officer
Abbink's testimony regarding the HGN test because there was insufficient evidence that she was
qualified to give expert testimony regarding that test. (1) We review the trial court's ruling on the
admissibility of expert testimony for abuse of discretion. Russeau v. State, 171 S.W.3d 871,
881 (Tex. Crim. App. 2005). 

 The court of criminal appeals has held that


For testimony concerning a defendant's performance on the HGN test to be
admissible, it must be shown that the witness testifying is qualified as an expert on
the HGN test, specifically concerning its administration and technique. In the case
of a police officer or other law enforcement official, this requirement will be satisfied
by proof that the officer has received practitioner certification by the State of Texas
to administer the HGN. 


Emerson v. State, 880 S.W.2d 759, 769 (Tex. Crim. App. 1994). Smith claims that the State made
no showing that Abbink received practitioner certification by the State of Texas. We disagree.

 On voir dire by defense counsel, although Abbink testified that she was certified, she
expressed uncertainty about whether she possessed an actual "certificate":


Q. Officer Abbink, you said you were certified on July the 23rd of '04?


A. Yes, sir.


Q. You had a certificate at that time?


A. Whatever the academy gives out at that time. I believe it was a certificate upon
graduation that they make sure that we are certified in every aspect.


Q. My question is on July 23rd of '04, did you possess a certificate certifying you
in the field sobriety tests?


A. I--I can't answer that. I don't know. I assumed I had been presented one at--by
the academy.


Q. But you don't know for sure?


A. No, sir.

 Smith then objected to Abbink's testimony, arguing that the record did not
demonstrate proper certification. However, before ruling on the objection, the trial court allowed
the State to clarify Abbink's responses:


Q. Now, earlier you told me that you were certified to administer the HGN test?


A. Yes.


Q. Okay. And you were told at the academy that you had completed the certification
process?


A. Yes.


Q. Did you do the tests on the 35 test subjects in the academy --


A. Yes, sir.


Q. -- in order to receive your practitioner certification?


A. Yes.


Q. Okay. Now, as the Judge just pointed out, when you answered Mr. Bass's
question, are you referring to the actual physical possession of the certificate?


A. Yes, sir.


Q. Okay. But on the date in question, you were, in fact, certified?


A. That is correct.


 The trial court then allowed defense counsel to ask Abbink one more question:


Q. On the day--on July 23rd, '04, who were you certified by?


A. I believe it's the National Highway Transportation Safety Administration
[NHTSA], or TEEX, and I can't remember who that--what that stands for, but that's
who certifies the peace officers.


Q. So that would have been a national certificate?


A. Yes, sir.


Q. Not a--not certification by the State of Texas?


A. Whatever--to be honest with you, I--I believe it is a state--or a national
certification.


 Based on this testimony, Smith again objected to Abbink's qualifications, arguing that
"Emerson requires certification by the State of Texas or extensive experience." In response, the
State explained that Abbink "probably got her certificate from Texas A&M Extension Services, and
it's the NHTSA--the NHTSA sponsors or promulgates the manual under which the field sobriety
tests are taught. I don't think NHTSA actually issues the certificate. It's issued by the extension
service through the Texas Law Enforcement Commission." The trial court overruled Smith's
objection, and Abbink was permitted to testify.

 Despite Abbink's difficulty in relating the details surrounding her certification, we
conclude that the State made an adequate showing that Abbink was qualified to administer the HGN
test. Abbink repeatedly testified that she was certified. Furthermore, Abbink testified that she
performed the HGN test on thirty-five test subjects in the police academy in order to receive her
practitioner certification. See Tex. R. Evid. 702 (witness may be qualified as expert by
"knowledge, skill, experience, training, or education"); see also Smith v. State, 65 S.W.3d 332,
344 (Tex. App.--Waco 2001, no pet.) (holding that if officer is qualified by other
training or experience, certification is not necessary); Kerr v. State, 921 S.W.2d 498, 502
(Tex. App.--Fort Worth 1996, no pet.) (same). On this record, we hold that the trial court did not
abuse its discretion in finding that Abbink was qualified to testify about the HGN test and its results. 
We overrule Smith's second issue. 

Jury instructions

 In his third issue, Smith claims that the court's charge instructed the jury to convict 

Smith on a theory that was not supported by the evidence. Specifically, Smith contends that there
was no evidence in the record that he was intoxicated by anything other than alcohol. The court's
charge authorized conviction if the jury determined that Smith was driving while intoxicated "by
reason of the introduction of alcohol, a controlled substance, a drug, or a combination of two or more
of those substances into the said defendant's body, or when he had an alcohol concentration of at
least 0.08." This charge was submitted to the jury over Smith's timely objection.

 The trial court's charge to the jury must set forth "the law applicable to the case."
Tex. Code Crim. Proc. Ann. art. 36.14 (West 2006). "It is not enough for the charge to merely
incorporate the allegation in the charging instrument. Instead, it must also apply the law to the facts
adduced at trial." Gray v. State, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004). A jury charge that
fails to accurately instruct the jury on the law and its application is erroneous. Id. An error in the
jury charge is generally reviewed under an abuse of discretion standard. Guzman, 955 S.W.2d at 89. The law applicable to this case is the statutory definition of intoxication. The penal
code defines intoxication as not having the normal use of one's physical or mental faculties by
reason of the introduction into the body of: (1) alcohol; (2) a controlled substance; (3) a drug; (4) a
dangerous drug; (5) a combination of two or more of those substances; or (6) any other substance.
See Tex. Penal Code Ann. § 49.01(2)(A) (West 2003). Thus, in order for one to be intoxicated, the
statute clearly requires that one of the above substances, or a combination thereof, be introduced into
the body. Atkins v. State, 990 S.W.2d 763, 767 (Tex. App.--Austin 1999, pet. ref'd). The
statute specifically ties the intoxication standard under section 49.01(2)(A) to the listed
individual substances or the synergistic effect caused by the combination of two or more of those
substances. Id.  The instruction given by the trial court mirrors the statutory definition of
intoxication. See Tex. Penal Code Ann. § 49.01(2).

 Based on the evidence in the record, we find that the trial court did not abuse its
discretion in charging the jury on the statutory definition of intoxication. Although there was
evidence in the record that Smith's intoxication may have been from the consumption of alcohol
alone, there was also evidence that Smith took other drugs prior to consuming alcohol. Smith
testified that at approximately 6:30 p.m. on the night he was arrested, he consumed both
a prescription muscle relaxer and a prescription painkiller. Smith further admitted to consuming
two beers between 8:00 p.m. and 9:30 p.m., less than three hours after taking the medication.
The jury also heard evidence that Smith was aware that he should not consume alcohol
while taking muscle relaxers. 

 Additionally, the jury heard evidence that muscle relaxers and painkillers can have
an intoxicating effect. Although the State's drug recognition expert testified that such drugs are
usually only active for "four to six hours," Herring qualified this testimony, stating that a drug's
active life depends on the dosage and "the actual way that the drug is made." According to Herring,
certain drugs could be "designed to slowly release over the course of so many hours." Additionally,
Herring testified to the "synergistic effect" between medication and alcohol.

 Once the jury heard evidence that Smith had taken prescription medication less than
three hours before consuming alcohol and that the medication could increase the intoxicating effect
of alcohol, the portions of the statutory definition referencing the effects of the "combination" of
drugs and alcohol became "law applicable to the case." See Sutton v. State, 899 S.W.2d 682, 685
(Tex. Crim. App. 1995). Therefore, it was not an abuse of discretion for the trial court to provide
the jury with an instruction on intoxication that was not limited to alcohol and that mirrored the
complete statutory definition of intoxication in the penal code. See Tex. Penal Code Ann.
§ 49.01(2)(A); Gray, 152 S.W.3d at 133. We overrule Smith's third issue.


CONCLUSION

 Having overruled Smith's issues on appeal, we affirm the judgment of the trial court.



 ____________________________________

 Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: March 7, 2007

Do Not Publish 

1. HGN stands for "horizontal gaze nystagmus." Nystagmus is defined as an "involuntary
rapid oscillation of the eyeballs in a horizontal, vertical, or rotary direction." Emerson v. State, 880
S.W.2d 759, 765 (Tex. Crim. App. 1994). Horizontal gaze nystagmus is a variety of nystagmus that
occurs when an individual's eyes are deviated to the lateral extreme. Id. The effect of alcohol on
nystagmus, specifically HGN, is well documented. Id. at 766.