Richard Darrell FORD, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–02–00065–CR.

Court of Appeals of Texas, Dallas.

Jan. 28, 2003.

Rehearing Overruled March 31, 2003.

Discretionary Review Refused Nov. 5, 2003.

George R. Milner, Gary A. Udashen, Sorrels & Udashen, Dallas, for Appellant.

William T. (Bill) Hill, Jr., Cheryl D. Holder, Asst. Dist. Atty., Dallas, for State.

Before Justices MOSELEY, LANG, and LAGARDE.[1]

## OPINION

Opinion by Justice LANG.

Richard Darrell Ford appeals his conviction, after a jury trial, of driving while intoxicated (DWI). The trial court assessed punishment at 180 days in jail, probated for twenty-four months, and a $1000 fine. In nine issues, appellant asserts (1) the trial court erred by overruling his objection to the jury charge definition of "normal use," (2) the trial court erred in denying his motion for new trial based on a juror's incorrect answers during voir dire and the juror's subsequent role in the deliberations process, and (3) the evidence is factually insufficient to support his conviction. For reasons that follow, we resolve appellant's nine issues against him and affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of July 9, 2000, appellant was driving his automobile in Dallas when he made a left turn onto an intersecting street. A policeman driving in the opposite direction coming towards appellant was forced to slam on his brakes to avoid a collision. The policeman, Officer Jeffrey Jones, pulled appellant's car over.

Officer Jones immediately noticed appellant's eyes were bloodshot and recognized the smell of alcohol on his breath. Appellant admitted to consuming two beers.

1. The Honorable Sue Lagarde, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

When asked, appellant was unable to correctly recite a portion of the alphabet. Jones asked Michael Phillips, the officer riding with him who was trained and certified in administering sobriety tests, to examine appellant. Phillips conducted several sobriety tests, determined that appellant was intoxicated, and arrested him. Jones and Phillips transported appellant to a police station, where they performed more tests. Appellant did not consent to breath or blood samples, but police videotaped him in an intoxilyzer room.

Appellant pleaded not guilty to the charge of driving while intoxicated. During voir dire, a prospective juror, Eric Greggerson, volunteered that he had previously been arrested for DWI. When asked by appellant's trial counsel whether he had gone to trial on his DWI, Greggerson stated that he had. Further, Greggerson stated he could be completely fair to the accused despite his own DWI experience. Neither side used a peremptory strike on Greggerson, and he was selected to serve on the jury, which found appellant guilty of DWI.

"NORMAL USE" DEFINITION

In his first issue, appellant argues the trial court erred in overruling his objection to the jury charge definition of "normal use." Specifically, appellant claims that since the statute does not contain a definition of "normal use," the trial court was not allowed to create its own definition. For support of this argument, Appellant relies exclusively on *Murphy v. State*, 44 S.W.3d 656 (Tex.App.-Austin 2001, no pet.). In the case at bar, the court submitted the following definition as part of the jury charge: " 'Normal use' as used herein means the manner in which a normal non-intoxicated person would be able to use his mental or physical faculties."

### A. Standard of Review

In reviewing a claim of charge error, we must first determine whether the jury charge contains error. *Mann v. State*, 964 S.W.2d 639, 641 (Tex.Crim.App. 1998); *see also* TEX.R.APP. P. 44.2. If the charge does contain error, we must then determine whether sufficient harm resulted from the error to require reversal. *Mann*, 964 S.W.2d at 641. Where an appellant has made a timely objection at trial, an appellate court will search for only "some harm." *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex.Crim.App.1994).

### B. Applicable Case Law

In *Murphy v. State*, the appellant challenged the trial court's definition of "normal use" in the jury charge. The charge read as follows:

> The term "normal use," means a normal non-intoxicated person. Whether or not the defendant had the normal use of his mental and physical faculties does not require proof of the defendant's normal abilities. Rather, it means that the faculties which must be tested belong to the defendant. You should consider if the defendant could use his faculties on the occasion in question in the manner in which the normal non-intoxicated person would be able to use his faculties.

*Murphy*, 44 S.W.3d at 661. The court concluded the instruction was erroneous because it was "confusing, misleading, and a misstatement of the law." *Id.* at 664. In so doing, the court immediately clarified, in a footnote: "We do not imply that none of the matters contained in the complained-of jury instruction could not be the subject of a proper jury charge. We simply hold that it was erroneous to consolidate these matters as a definition of 'normal use' under the circumstances presented." *Id.* at 666 n. 8.

The court then conducted an *Almanza*[2] harm analysis and determined that the error was not harmless because of the emphasis placed on the erroneous definition by the prosecutor in closing argument. Thus, the court reversed and remanded the case to the trial court. *Id.* at 666.

The State's argument in *Murphy* relied on the Austin court's decision in *Atkins v. State*, 990 S.W.2d 763 (Tex.App.-Austin 1999, pet. ref'd). In *Atkins*, the Austin court affirmed a DWI conviction over the appellant's sufficiency of the evidence challenge. Although the jury charge included a definition of "normal use," the definition used in *Atkins* was not the same one used in *Murphy*. The *Atkins* definition was as follows: " 'Normal use' means the manner in which the normal non-intoxicated person would be able to use his faculties." *Id.* at 769. In *Murphy*, the court noted that *Atkins* held the jury charge properly stated the statutory standards, yet *Atkins* did not expressly approve the specific definition of "normal use" in the jury charge. *See Murphy*, 44 S.W.3d at 662–63. In support of its decision to reverse the conviction, the *Murphy* court noted that the definition set out in *Atkins* was "a far cry from even the first sentence in the objected-to and questioned instruction in [*Murphy*] . . . . The balance of the definition of 'normal use' given in the instant case is in *no way similar or supported by* Atkins." *Id.* at 663 (emphasis added).

In a more recent case, *Davy v. State*, 67 S.W.3d 382 (Tex.App.-Waco 2001, no pet.), the appellant also challenged the jury charge's definition of "normal use." The instruction in that case was as follows:

"Normal use as used herein means the manner in which a normal non-intoxicated person would be able to use his mental or physical faculties."[3] *Id.* at 394. The Waco court of appeals affirmed the trial court by holding that the charge, taken as a whole, properly instructed the jury on the law applicable to DWI, including the term "normal use." *Id.* at 395–96.

### C. Application of Law to the Facts

■ Appellant argues the *Murphy* charge and the charge in the instant case are "essentially the same thing." We disagree. The definition used in this case is identical to that which the Waco court of appeals approved in *Davy* and is only nominally different from the one used in *Atkins*. It follows then—to borrow the language of the Austin court—that the definition in this case is a "far cry" and is "in no way similar" to the definition disapproved of in *Murphy*. We conclude the jury charge in this case did not contain error. Accordingly, we resolve appellant's first issue against him.

### JUROR MISCONDUCT

In his second, third, and fourth issues, appellant argues the trial court erred in denying his motion for new trial because a juror's "incorrect and misleading answers" during voir dire violated his rights under the United States and Texas Constitutions and under appellate rule 21.3. In his fifth, seventh, and eighth issues, appellant argues the trial court erred in denying his motion for new trial because jury misconduct during deliberations violated his rights under the United States and Texas

---

**2.** *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim.App.1984) (op. on reh'g).

**3.** The *Davy* court noted the trial court had likely derived its definition of "normal use" from this Court's decision in *Massie v. State*, 744 S.W.2d 314, 315–16 (Tex.App.-Dallas 1988, pet. ref'd), where one of the issues was whether "normal use" referred to a normal non-intoxicated person's mental and physical faculties or whether it referred to the particular mental and physical faculties of the accused when he is non-intoxicated.

Constitutions and under appellate rule 21.3(g).[4] In his sixth issue, appellant contends the trial court erred in denying his motion for new trial based on the jury's receipt of other evidence during deliberations in violation of appellate rule 21.3(f).[5]

### A. Standard of Review

 A trial court's ruling denying a defendant's motion for new trial is reviewed under an abuse of discretion standard. *Salazar v. State*, 38 S.W.3d 141, 148 (Tex.Crim.App.2001). The court of appeals does not substitute its judgment for that of the trial court, but simply determines whether the trial court's analysis was arbitrary or unreasonable. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim.App. 1995). The trial court is the sole judge of the credibility of any testifying jurors; where there is conflicting evidence on an issue of fact as to jury misconduct, the trial judge determines the issue, and there is no abuse of discretion in overruling the motion for new trial. *Id.* (quoting *Thomas v. State*, 699 S.W.2d 845, 854 (Tex.Crim. App.1985)).

### B. Applicable Law

#### 1. Voir Dire

 The voir dire process is designed to insure, to the fullest extent possible, that an intelligent, alert, disinterested, impartial, and truthful jury will perform the duty assigned to it. *Armstrong v. State*, 897 S.W.2d 361, 363 (Tex.Crim.App. 1995); *De La Rosa v. State*, 414 S.W.2d 668, 671 (Tex.Crim.App.1967). "Where a juror withholds material information in the voir dire process, the parties are denied the opportunity to exercise their challenges, thus hampering their selection of a disinterested and impartial jury." *Salazar v. State*, 562 S.W.2d 480, 482 (Tex.Crim. App. [Panel Op.] 1978). To be material, however, the information withheld must be of a type suggesting potential for bias or prejudice. *Decker v. State*, 717 S.W.2d 903, 907 (Tex.Crim.App.1983) (op. on reh'g). It is not the mere failure to disclose information that warrants a new trial. Rather, it is the chance that a biased individual came to serve through silence or deception that the law seeks to ameliorate. *Santacruz v. State*, 963 S.W.2d 194, 197 (Tex.App.-Amarillo 1998, pet. ref'd) (citing *Von January v. State*, 576 S.W.2d 43, 45 (Tex.Crim.App. [Panel Op.] 1978)). Furthermore, defense counsel has an obligation to ask questions calculated to bring out information which indicates a juror's inability to be impartial and truthful. *Jones v. State*, 596 S.W.2d 134, 137 (Tex. Crim.App. [Panel Op.] 1980), *overruled on other grounds by Sneed v. State*, 670 S.W.2d 262, 266 (Tex.Crim.App.1984). The failure of a juror to disclose material information is not considered to have been "withheld" unless defense counsel asked such questions during voir dire. *Armstrong*, 897 S.W.2d at 364; *Cuellar v. State*, 943 S.W.2d 487, 491 (Tex.App.-Corpus Christi 1996, pet. ref'd).

#### 2. Jury Deliberations

 Under appellate rule 21.3, a defendant must be granted a new trial when "after retiring to deliberate, the jury has received other evidence." TEX.R.APP.

---

4. Appellate rule 21.3(g) provides that a defendant must be granted a new trial "when the jury has engaged in such misconduct that the defendant did not receive a fair and impartial trial." TEX.R.APP. P. 21.3(g).

5. Appellate rule 21.3(f) provides that a defendant must be granted a new trial "when, after retiring to deliberate, the jury has received other evidence; when a juror has talked to anyone about the case; or when a juror became so intoxicated that his or her vote was probably influenced as a result." TEX.R.APP. P. 21.3(f).

P. 21.3(f). To show jury misconduct, the defendant must show that (1) the other evidence was actually received by the jury, and (2) it was detrimental. *Garza v. State*, 630 S.W.2d 272, 274 (Tex.Crim.App. [Panel Op.] 1981); *Eckert v. State*, 623 S.W.2d 359, 364 (Tex.Crim.App. [Panel Op.] 1981), *overruled on other grounds by Reed v. State*, 744 S.W.2d 112, 125 (Tex.Crim.App. 1988); *Carroll v. State*, 990 S.W.2d 761, 762 (Tex.App.-Austin 1999, no pet.). If there is conflicting evidence as to whether the jury received the evidence, the resolution of such fact issue by the trial court will not be reversed absent an abuse of discretion. *Hunt v. State*, 603 S.W.2d 865, 868 (Tex.Crim.App. [Panel Op.] 1980). A new trial is not required every time a juror mentions something that is not supported by evidence adduced at trial. *Stephenson v. State*, 571 S.W.2d 174, 176 (Tex.Crim. App. [Panel Op.] 1978). A passing remark alone will not constitute the receipt of other evidence. *See Saenz v. State*, 976 S.W.2d 314, 322 (Tex.App.-Corpus Christi 1998, no pet.); *Avalos v. State*, 850 S.W.2d 781, 783 (Tex.App.-Houston [14th Dist.] 1993, no pet.). In order to determine whether evidence was "received," we look to the context in which it was mentioned and the extent to which the jurors discussed it. *Gaona v. State*, 733 S.W.2d 611, 619 (Tex.App.-Corpus Christi 1987, pet. ref'd) (casual passing remark mentioned only once was not "received" by jury). Where the testimony introduced at the hearing on a motion for new trial reflects conflicting evidence regarding jury misconduct, an issue of fact is raised and there is no abuse of discretion if the motion for new trial is overruled. *Eckert*, 623 S.W.2d at 364.

### C. Application of Law to the Facts

#### 1. Voir Dire

During voir dire, defense counsel asked a prospective juror, Eric Greggerson, if he had ever had any type of "negative experience with alcohol" or whether alcohol had ever "affected [him] in any way." Greggerson answered by admitting, "I received a DWI when I was twenty-five." *Id.* Defense counsel then asked the following questions: "Do you feel that if you became a juror that that might affect you in any way, the past experience with it? Did your case go to trial?" Greggerson responded, "Yes, sir," apparently in response to the latter question. Defense counsel then asked, "If you became a juror, could you be completely fair to the accused just as much as anybody who'd never had any knowledge of the system or anything like that?" Greggerson responded that he could. Defense counsel did not use a peremptory strike on the juror, and he was subsequently selected to serve.

After trial, defense counsel learned that Greggerson had actually pleaded guilty to DWI in his case. Appellant moved for a new trial on the basis that he had not used a peremptory strike on Greggerson because of his "incorrect and misleading answers" to defense counsel's questions. At the hearing on appellant's motion for new trial on this issue, appellant did not call Greggerson, whose statement was in question. The trial court did, however, hear testimony from appellant's trial counsel. In denying the motion, the court stated the following:

> I do not see the statement [Greggerson] made as being a lie to the court. At best, he misunderstood. I do not believe based on what I heard that he was left on the jury because he said he had a trial. I believe he was left on the jury because he said he was convicted of a DWI.

■ The trial court was the sole judge of the credibility of the testifying witnesses at the hearing on appellant's motion for new trial. The trial court had before it

conflicting evidence on the issue of whether the prospective juror had lied in his answer. The judge determined that the juror had not lied, but rather had simply misunderstood the difference between a trial on the merits and an appearance before the court for entry of a plea. As a result, the court denied the motion for new trial. This Court only determines whether the trial court's analysis was "arbitrary" or "unreasonable." We conclude it was not. Additionally, the information was not "material" because it was not of the type "suggesting potential for bias or prejudice." *Decker*, 717 S.W.2d at 907. In fact, the juror's affirmative answer to defense counsel's follow-up question asking whether he could be "completely fair to the accused ... as much as anybody who'd never had any knowledge of the system" suggests the juror's *non*-bias as opposed to his potential for bias. In short, we conclude the trial court did not abuse its discretion. Accordingly, we resolve appellant's second, third, and fourth issues against him.

### 2. Jury Deliberations

Appellant argues he is entitled to a new trial due to "jury misconduct during the deliberations." Specifically, appellant argues Greggerson improperly relayed to the jury his own personal DWI experience and his opinion that one's ability to perform sobriety tests well does not mean that one is not intoxicated. The State contends appellant fails to show jury misconduct on either point.

At the hearing on appellant's motion for new trial on this issue, the court heard testimony only from juror Sunni Josey and appellant's trial counsel. An affidavit of appellant's trial counsel was attached to the motion for new trial. Josey testified that her decision to find appellant guilty "had nothing to do with [Greggerson]" and was "based on [her] beliefs, not something anyone said to [her]." She also indicated she thought the court would not allow the jury to "go to a deadlock," although she could not remember if anyone had told her that. In denying appellant's motion for new trial, the trial court stated:

> As far as the issue on whether or not that statement that [Greggerson] made was detrimental, [Josey] clearly said that she ignored it, and she never once said it was detrimental. From what I understand, her confusion was she felt she had to make a decision, and she made it clear it was not based on anything that I said, the court said, or the lawyers said. She just felt she had to make a decision, and that was the decision she chose to make.

Although the Court of Criminal Appeals has not addressed this specific evidentiary issue, rulings of the Texas Supreme Court provide some guidance. *See Moon v. State*, 44 S.W.3d 589, 596 (Tex.App.-Fort Worth 2001, pet. ref'd) (appellate courts cannot ignore the guidance given in civil cases in analysis of evidence rules). A case dealing with similar issues to the one before us is *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362 (Tex.2000).

*Golden Eagle Archery* was a products liability case. One of the grounds upon which the appellant sought a new trial was an allegation that juror Barbara Maxwell had committed misconduct before and during deliberations. Appellant in *Golden Eagle Archery* presented testimony and affidavits from three jurors regarding the conduct in question. According to this evidence, during a trial recess, but before the jury deliberations commenced, Maxwell commented to another juror that she had been on a jury in a wrongful death case that had awarded a plaintiff nothing in damages, which appeared to be a different answer than what she had indicated during voir dire. Later, during trial, but before adjourning for jury deliberations,

Maxwell stated to her fellow jurors that she did not believe in "awarding money in stuff like that," and that "we are the ones who end up paying for it." *Id.* at 365. Additionally, Maxwell allegedly made the following objectionable comments to other jurors during jury deliberations: (1) as to damages, stating that "there is too much of this going on," which the testifying juror believed referred to the filing of personal injury law suits; (2) that the plaintiff had probably already received a big settlement from Wal–Mart and "did not need any more money out of this case;" and (3) Maxwell speculated to other jurors about whether the plaintiff had been drinking alcoholic beverages when the underlying accident had occurred. *Id.* at 365–66.

The supreme court analyzed the allegations of juror misconduct in *Golden Eagle Archery* by addressing rule 606(b) of the Texas Rules of Evidence and rule 327(b) of the Texas Rules of Civil Procedure. There is no counterpart to rule 327(b) in the Code of Criminal Procedure. Nevertheless, since 1998, the Texas Rules of Evidence apply to both civil and criminal cases.[6] Texas rule of evidence 606(b) prohibits a juror from testifying, either in person or by affidavit, "as to any matter or statement occurring during the jury's deliberations." TEX.R. EVID. 606(b). The only exceptions are that "a juror may testify: (1) whether any outside influence was brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve." *Id.*

In its analysis, the supreme court reviewed separately the competence of the evidence regarding Maxwell's comments *prior to* deliberations and the competence of comments made *during* deliberations. Only the analysis of comments *during* de-

liberations is relevant for our purposes. The court held that evidence of Maxwell's comments *during* deliberations was simply *incompetent* evidence that could not support the granting of a motion for new trial. *Golden Eagle Archery,* 24 S.W.3d at 369. In so finding, the court reinforced the principle that "a juror may testify about jury misconduct provided it does not require delving into [the jury's] deliberations." *Id.* at 370. Further, the court found that Maxwell's comments during deliberations did not meet the test of improper outside influence because the rules contemplate that an outside influence originates from sources other than the jurors themselves. *Id.; see also Wooten v. S. Pac. Transp. Co.,* 928 S.W.2d 76, 78–79 (Tex.App.-Houston [14th Dist.] 1995, no writ) (to constitute "outside influence" the information must come from a non-juror who introduces it to affect the verdict and not from within the jury's deliberations or as part of the jury's mental process).

■■ The limitation upon post-trial juror testimony is intended to encourage open discussion among jurors during deliberations, promote the finality of judgments, and protect jurors from harassment by unhappy litigants seeking grounds for a new trial. *Golden Eagle Archery,* 24 S.W.3d at 367; *Hicks v. State,* 15 S.W.3d 626, 630 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd); *Hines v. State,* 3 S.W.3d 618, 622–23 (Tex.App.-Texarkana 1999, pet. ref'd); *Sanders v. State,* 1 S.W.3d 885, 888 (Tex.App.-Austin 1999, no pet.).

■■ The evidence appellant presented to the trial court in this case does not appear to fall within either exception described in evidence rule 606(b). Had the trial court determined that such evidence supported the granting of appellant's mo-

---

6. The Texas Rules of Criminal Evidence were amended on March 1, 1998, at which time they were combined with the Texas Rules of Civil Evidence to make up the Texas Rules of Evidence.

tion for new trial, the court would have violated not only the rules, but the policy described above. Thus, the evidence offered by appellant is incompetent to support the granting of a motion for new trial. We conclude the trial court did not abuse its discretion in denying appellant's motion for new trial. Appellant's fifth, sixth, seventh, and eighth issues are hereby resolved against him.

FACTUAL SUFFICIENCY OF THE EVIDENCE

In his ninth issue, appellant complains the evidence is factually insufficient to support the conviction.

**A. Standard of Review and Applicable Law**

In conducting a factual sufficiency review, we are to neutrally analyze all of the evidence without the prism of in the light most favorable to the prosecution. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim.App.2000). We will reverse only if we determine the proof of guilt is so weak or the contrary proof so overwhelming that it renders the guilty verdict clearly wrong and unjust. *Id.* In conducting this review, we must be appropriately deferential to the fact finder's role. *Id.* The jury, as trier of fact, is the exclusive judge of the credibility of witnesses and weight given their testimony. *See id.; Jones v. State*, 944 S.W.2d 642, 648 (Tex.Crim.App. 1996).

A person commits the offense of driving while intoxicated if he operates a vehicle while intoxicated in a public place. TEX. PEN.CODE ANN. § 49.04 (Vernon Supp. 2003). A person is intoxicated when he does not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into the body. *Id.* § 49.01(2)(A).

**B. Application of Law to the Facts**

In this case, Officer Jones testified that at approximately 1:20 a.m. on July 9, 2000, he pulled appellant's car over because it had cut off his police car while attempting to make a left turn in the face of oncoming traffic. Jones testified appellant had bloodshot eyes and an odor of alcohol about his person. Appellant admitted he had been drinking by stating that he had consumed two beers. Appellant performed poorly on several field sobriety tests. Officer Phillips testified that, in his opinion, appellant did not have the normal use of his physical and mental faculties. The videotape of appellant in the intoxilyzer room was also introduced, and appellant failed to follow several instructions given to him. No evidence was put on by the defense.

Having neutrally analyzed all the evidence, we conclude the proof of guilt is not so obviously weak nor the contrary proof so overwhelming that it renders the guilty verdict clearly wrong and manifestly unjust. Thus, we conclude the evidence is factually sufficient to support the conviction. Accordingly, we resolve appellant's ninth issue against him.

We affirm the trial court's judgment.