

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-11-00173-CR

_____

PAMELA DAWN BAGGETT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 4th Judicial District Court
Rusk County, Texas
Trial Court No. CR10-053

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

Pamela Dawn Baggett had driven a borrowed Jeep into a ditch on Chicken Feather Road in Rusk County in the wee hours of August 1, 2009. Officer Ann McLemore of the Henderson Police Department arrived on the scene and found Baggett disoriented, unsure of her location or the time, and trying to start the Jeep's still-running motor. Baggett failed the field-sobriety tests administered by McLemore and was arrested for driving while intoxicated (DWI). From her jury-trial conviction of DWI and her enhanced third-degree-felony sentence of fifty-eight years' imprisonment, Baggett appeals, contending simply that it was reversible error to define "normal use" as was done here. We affirm the trial court's judgment, because, while (1) defining "normal use" in the jury charge was error, (2) the error was harmless.

More of the facts will help frame the issues we discuss below.

It was clearly three prescription drugs in Baggett's system that caused her impaired condition. A breathalyzer test administered to Baggett showed no alcohol in her system. But Baggett admitted to having taken Vicodin,[1] Valium,[2] and Demerol[3] "all day."[4]

---

[1] Vicodin consists of "a preparation of acetaminophen and the bitartrate of hydrocodone," *available at* http://www.merriam-webster.com.

[2] Valium consists of "a preparation of diazepam," which is a "synthetic tranquilizer . . . used especially to relieve anxiety and tension and as a muscle relaxant," *available at* http://www.merriam-webster.com.

[3] Demerol is "meperidine," a "synthetic narcotic drug used . . . as an analgesic, sedative, and antispasmodic . . . .," *available at* http://www.merriam-webster.com.

[4] The drug detail report indicated the presence of methamphetamine, alprazolam metabolites, and cocaine metabolites in Baggett's system. This report was not admitted at trial, but was made a part of the appellate record.

2

Baggett's impairment seemed pretty clear as well. In addition to the above facts, as McLemore escorted Baggett to the patrol vehicle, upon her arrest, Baggett almost ran into the vehicle and had difficulty standing. Texas Department of Public Safety Officer Stephen Gresham was asked to look at, and essentially grade, the standardized field sobriety tests conducted by McLemore.[5] Based on the results of the standardized tests administered by McLemore, Gresham would have arrested Baggett.

Gresham also interviewed Baggett and performed repeat testing. Although the interview was conducted at 3:15 a.m., Baggett believed it was 7:45 p.m. She had difficulty walking, and her speech was slurred, slow, and at times incoherent. Baggett likewise failed follow-up field-sobriety testing[6] also performed by Gresham.

*(1)    Defining "Normal Use" in the Jury Charge Was Error*

Baggett's DWI conviction under Section 49.04(a) of the Texas Penal Code required a finding that she was intoxicated, which rested in part, here, on an implicit finding that she did not have "normal use" of her faculties due to the use of some impairing substance. *See* TEX. PENAL CODE ANN. § 49.01(2)(A) (West 2011).

---

[5]Gresham is a certified drug recognition expert and holds advanced certification in the administration of standardized field sobriety tests.

[6]Gresham indicated that people who suffer from arthritis, who have low back or ankle problems, or who are fifty or more pounds overweight are not good candidates for field sobriety testing. Baggett has undergone three knee surgeries; she was scheduled for surgery to correct a foot problem at the time of her arrest; and she is overweight. Baggett claimed her foot problem did not affect her ability to walk, but that her feet are tender. The defense argued to the jury that Baggett had "some problems," including three knee surgeries and upcoming foot surgery.

3

Here, the jury charge set forth the proper definition of "intoxicated," but also defined "normal use," a term not defined in the statute. The term "normal use" is included within the statutory definition of "intoxicated," an essential element of the offense charged. The charge in this case defined "normal use" as "the manner in which a normal non-intoxicated person would be able to use his mental or physical faculties." Baggett complains that the inclusion of this definition in the jury charge[7] was an improper comment on the weight of the evidence.

The trial court must provide the jury with "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). Moreover, the trial court may not express "any opinion as to the weight of the evidence." *Id.*; *Walters v. State*, 247 S.W.3d 204, 208 (Tex. Crim. App. 2007). Because "[j]uries are free to 'consider and evaluate the evidence in whatever way they consider it relevant to the statutory offenses,'. . . 'special, non-statutory instructions, even when they relate to statutory offenses or defenses, generally have no place in the jury charge.'" *Kirsch v. State*, 357 S.W.3d 645, 652 (Tex. Crim. App. 2012) (quoting *Walters*, 247 S.W.3d at 211).

In *Kirsch*, the trial court instructed, in its charge to the jury, that the term "operate," for purposes of the offense of DWI, means "to exert personal effort to cause the vehicle to function."

---

[7]Counsel objected to the use of the definition. When presented with a jury charge complaint, we review the charge under *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). Under *Almanza*, we must first determine whether error exists in the charge and, if we find error, whether such error caused sufficient harm to require reversal. *See Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). In other words, an error that has been properly preserved is reversible unless it is harmless. *Almanza*, 686 S.W.2d at 171.

4

*Id.* at 652.   While the high court recognized this definition was appropriate in the assessment of the sufficiency of the evidence, it was nevertheless improper to instruct the jury "as to that definition in this case" because the instruction "impermissibly guided their understanding of the term."   *Id.* at 652.[8]

Here, the term "normal use" is a common term.   Like the term "operate," it "has not acquired a technical meaning and may be interpreted according to its common usage."   *Id.* at 650. Statutorily undefined words and phrases shall be "construed according to the rules of grammar and common usage.   Words and phrases that have acquired a technical or particular meaning . . . shall be construed accordingly."   TEX. GOV'T CODE ANN. § 311.011 (West 2005).   Therefore, the jury should have been free to assign the term "normal use" "any meaning that is acceptable in the common parlance."   *See Kirsch*, 357 S.W.3d at 652 (definition impermissibly guided understanding of term).   Moreover, the definition of "normal use" did nothing to clarify the law for the jury and was unnecessary.   *See Brown v. State*, 122 S.W.3d 794, 802 (Tex. Crim. App. 2003).   In that case, the trial court instructed the jury that "[i]ntent or knowledge may be inferred by acts done or words spoken."   *Id.* at 803.   The court concluded the instruction was improper because the instruction

> is simply unnecessary and fails to clarify the law for the jury.   It is not a statutory presumption, but it is a judicial review device for assessing the sufficiency of the evidence to support a jury's finding of culpable intent.   It is a common-sense tool

---

[8]The definition also tended to emphasize evidence that would support a finding that the defendant was operating his motorcycle.   *Kirsch*, 357 S.W.3d at 652.

5

for a trial judge to use in gauging the sufficiency of the evidence at a motion for directed verdict or motion for new trial and for sufficiency review by appellate courts, but it is not an explicit tool for the jury.

*Id.* at 802–03. Here, the definition of "normal use" is likewise a tool for the court to gauge the

sufficiency of the evidence. Even though the definition was neutral in itself, and did not "pluck

out any specific piece of evidence" for its application, it falls marginally on the wrong side of the

"improper-judicial-comment scale" because it tends to focus the jury's attention on a specific type

of evidence that could support the intoxication element of the offense. *See id.*[9]

*(2)  Defining "Normal Use" Was Harmless*

In accordance with *Almanza*, when a timely objection is made to charge error in the trial

court, "reversal is required if the error is 'calculated to injure the rights of defendant.'" *Almanza*,

---

[9]The State relies on *Davy v. State*, 67 S.W.3d 382 (Tex. App.—Waco 2001, no pet.), and *Ford v. State*, 129 S.W.3d 541 (Tex. App.—Dallas 2003, pet. ref'd), both of which predate *Kirsch*. In *Davy*, the issue with regard to the definition of "normal use" was whether that definition—the same definition as was given here—was erroneous and lowered the State's burden of proof. *Davy*, 67 S.W.3d at 394. Here, the issue is not whether the definition of "normal use" was an incorrect statement of the law; rather, it is whether the provision of a statutorily undefined term utilized within the statutory definition of "intoxicated" was an improper judicial comment. Moreover, the definition of "normal use" in *Davy*, as in this case, was derived from a case involving an assessment of the sufficiency of the evidence. *See id.* Even when a definition of a statutorily undefined term is appropriate in the assessment of evidentiary sufficiency, *Kirsch* teaches that it may nevertheless be improper to include such a definition in the jury charge.

In *Ford*, the definition of "normal use" was identical to the definition used by the trial court here. The Dallas court distinguished the definition of "normal use" from the erroneous definition of that term given in *Murphy v. State*, 44 S.W.3d 656, 664 (Tex. App.—Austin 2001, no pet.) (definition "confusing, misleading, and a misstatement of the law"). Citing *Davy*, the court concluded the definition of the term "normal use" was properly given. *Ford*, 129 S.W.3d at 546.

In *Olson v. State*, No. 06-03-00152-CR, 2004 WL 894592 (Tex. App.—Texarkana, 2004, no pet.) (mem. op., not designated for publication), this Court, in discussing the definition of "normal use," stated,

We will not carte blanche approve the use of this definition, but in this case, there is no indication of any other reason for Olson's poor performance, and the definition is therefore not misleading.

*Id.* at *2.

686 S.W.2d at 171. Here, we cannot conclude that the error was calculated to injure Baggett's rights. In *Brown*, the instruction caused no harm to the defendant because the instruction was "mild, neutral, and an obvious common-sense proposition." *Brown*, 122 S.W.3d at 803. Similarly, the instruction of "normal use" here is "mild, neutral, and an obvious common-sense proposition." Moreover, the record contains copious evidence of Baggett's guilt, including the failure of two different field sobriety tests, a lack of awareness of the passage of time, speech which was slow, slurred, and sometimes incoherent, and Baggett's own admission that she had taken Vicodin, Valium, and Demerol all day. Although the trial court erred, the instruction was benign and harmless.

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice


Date Submitted:     May 11, 2012
Date Decided:       May 14, 2012

Publish