

NUMBER 13-11-0658-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LUCIUS J. BROWN,                                                            Appellant,

v.

THE STATE OF TEXAS,                                                        Appellee.

### On appeal from the 284th District Court
### of Montgomery County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Longoria**
**Memorandum Opinion by Chief Justice Valdez[1]**

---

[1] The Honorable Rose Vela, former Justice of this Court, did not participate in deciding the case because her term of office expired on December 31, 2012. In accordance with the appellate rules, she was replaced on panel by Justice Nora L. Longoria. *See* TEX. R. APP. P. 41.1(a).

By four issues, appellant, Lucius J. Brown, appeals his conviction for driving while intoxicated with two or more prior convictions for driving while intoxicated, a third-degree felony offense, enhanced by two prior felony convictions, with a finding that appellant did then and there use or exhibit a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 12.42(d), 49.04(a), 49.09(b)(2) (West 2011 & Supp. 2011). We affirm as modified.

## I. BACKGROUND[2]

During a jury trial, the testimony established that appellant drove his car halfway up a guardrail at a busy intersection in eastern Montgomery County during the time of day when school was letting out. When a Texas Department of Public Safety ("DPS") trooper arrived at the scene, she found appellant disoriented and confused. Emergency medical personnel examined appellant, found him to have low blood sugar, and drew blood for further testing. Appellant's blood was found to contain high amounts of carisoprodol (a muscle relaxer), meprobomate (a seizure medication), and hydrocodone (a narcotic). Dr. Sarah Kerrigan, head of the Sam Houston State University Regional Crime Laboratory, testified that these drugs, in the combination and amounts found in appellant's blood, could cause a person to be intoxicated.

At trial, appellant argued that his erratic driving and behavior were due to his pre-existing medical conditions, including diabetes and epilepsy. To rebut this defense, the State called Sparks Veasey III, M.D. to testify as a medical expert. According to Veasey's testimony, diabetes and low blood sugar could not explain appellant's behavior as documented in a video captured by the DPS trooper at the scene of the

---

[2] This case is before the Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

accident. Moreover, according to Veasey's testimony, appellant's behavior was not consistent with a manifestation of epilepsy or an epileptic seizure. In Veasey's medical opinion, appellant's behavior and the impairment of his physical and mental faculties were caused by the drugs that were found in his system, not his pre-existing medical conditions.

The jury found appellant guilty, and the trial court assessed a 25-year prison sentence. This appeal ensued.

## II. EVIDENTIARY RULING

In his first issue, appellant argues that the trial court erred in allowing Veasey to testify regarding matters related to neurology and endocrinology—specifically, the condition of epilepsy, diabetes, and how low blood sugar affects the human body.

### A. Applicable Law

The rules of evidence require a trial judge to make three separate inquiries, which must all be met before admitting expert testimony: (1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). These conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance. *Id.* Only the first condition is at issue in this case.

The mere fact that a witness "possesse[s] knowledge and skill not possessed by people generally . . . does not in and of itself mean that such expertise will assist the trier of fact regarding the issue before the court." *Id.* And because a witness will not

3

always qualify as an expert merely by virtue of a general background, qualification is a two-step inquiry. *Id.* A witness must first have a sufficient background in a particular field, but a trial judge must then determine whether that background "goes to the very matter on which [the witness] is to give an opinion." *Id.* The proponent must "establish that the expert has knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Id.* at 132.

## B. Standard of Review

An appellate court reviewing a trial court's ruling on the admissibility of evidence must utilize an abuse-of-discretion standard of review. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Prystash v. State*, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999). In other words, the appellate court must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Weatherred*, 15 S.W.3d at 542; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). In addition, the appellate court must review the trial court's ruling in light of what was before the trial court at the time the ruling was made. *Hoyos v. State*, 982 S.W.2d 419, 422 (Tex. Crim. App. 1998); *Hardesty v. State*, 667 S.W.2d 130, 133 n.6 (Tex. Crim. App. 1984).

"[B]ecause the possible spectrum of education, skill, and training is so wide, a trial court has great discretion in determining whether a witness possesses sufficient qualifications to assist the jury as an expert on a specific topic in a particular case." *Vela*, 209 S.W.3d at 136. When a trial judge determines that a witness is or is not qualified to testify as an expert, "appellate courts rarely disturb the trial court's determination." *Id.*

4

## C. Discussion

At trial, appellant objected that Veasey was not qualified to offer expert opinions regarding epilepsy, diabetes, and how low blood sugar affects the human body. In a hearing held outside the presence of the jury, the State established that Veasey is a medical doctor who specializes in forensic pathology. The State also established that, by virtue of his education, training, and experience—including an internship in internal medicine—Veasey is knowledgeable about diabetes, low blood sugar, and diseases such as epilepsy and has treated patients suffering from those conditions. As a forensic pathologist, Veasey has acquired expert knowledge regarding diseases such as diabetes, including "the pathogenesis of the disease, how it occurs, the reflection of the diseases, [and] how it manifests itself." Veasey also deals with toxicology issues on a daily basis.

Based on the foregoing, the trial court overruled appellant's objection:

> I am going to overrule your objection to Dr. Veasey as an expert and I do find that he has the significant expertise necessary. He has stated the basis of his opinions that he's going to offer in this case. They appear to be reliable based upon valid scientific information in theory.

We have reviewed the record and cannot conclude that the trial court's ruling fell outside the zone of reasonable disagreement. *See Weatherred*, 15 S.W.3d at 542; *see also Howard v. State*, Nos. 01-07-00686-CR, 01-07-00687-CR, 01-07-00688-CR, 2008 Tex. App. LEXIS 6431, *55 (Tex. App.—Houston [1st Dist.] Aug. 21, 2008, pet. ref'd) (mem. op., not designated for publication) ("Based on her education and experience, Dr. Gollaher was qualified to testify as to what might or might not have contributed to appellant's behavior at the time of the offenses."). Accordingly, appellant's first issue is overruled.

## III. SUFFICIENCY OF THE EVIDENCE

In his second issue, appellant argues that the evidence was not sufficient to support a deadly weapon finding.

### A. Standard of Review

Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.) (characterizing the *Jackson* standard as: "Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt"). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *Anderson v. State*, 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)). Reconciliation of conflicts in the evidence is within the fact-finder's exclusive province. *Id.* (citing *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000)). We must resolve any inconsistencies in the testimony in favor of the verdict. *Id.* (citing *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000)).

In reviewing the sufficiency of the evidence, we look at events occurring before, during, and after the commission of the offense, and we may rely on actions of the appellant that show an understanding and common design to do the prohibited act. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). Each fact need not point

directly and independently to the appellant's guilt, so long as the cumulative effect of all the incriminating facts is sufficient to support the conviction. *Id.*

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303, 307 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik*, 953 S.W.2d at 240).

## B. Applicable Law

Texas law authorizes a deadly weapon finding in felony DWI cases. *Sierra v. State*, 280 S.W.3d 250, 254 (Tex. Crim. App. 2009). A two-part inquiry is used to determine whether the evidence is sufficient to support a finding that a motor vehicle was used as a deadly weapon. *Id.* at 255. First, we evaluate the manner in which the defendant used the motor vehicle during the felony. *Id.* Second, we consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury. *Id.*

When considering the first prong of the *Sierra* test, courts evaluate whether the "defendant's driving was reckless or dangerous." *Id.* The inquiry involves several non-exclusive factors, including intoxication, speeding, disregard of traffic signs or signals, and failure to control the vehicle. *Id.* at 255–56.

When considering the second prong of the *Sierra* test, courts must determine whether the motor vehicle was capable of causing death or serious bodily injury. *Id.* at 255. There must be evidence that others were actually endangered. *Foley v. State*, 327 S.W.3d 907, 916 (Tex. App.—Corpus Christi 2010, pet. ref'd). A hypothetical potential for danger is not sufficient. *Id.* Therefore, we must "examine the record for evidence that there were other motorists present at the same time and place as the reckless driving occurred." *Id.* (internal quotations omitted).

## C. Discussion

With respect to the first prong of the *Sierra* test, the evidence at trial established that appellant was intoxicated. The evidence also established that appellant failed to control his vehicle insofar as he drove the vehicle halfway up a guardrail before coming to a stop. We have previously held that evidence of this specific nature is sufficient to support a finding of reckless or dangerous driving. *Id.* (holding that evidence of intoxication and collision into a traffic barrier was sufficient to establish the first prong of the *Sierra* test).

With respect to the second prong of the *Sierra* test, the evidence at trial established that the scene of the accident was "a very busy intersection, really backed up, lots of cars, lots of traffic." Thus, there was evidence that other motorists were present at the same time and place. *See id.* Nevertheless, the State concedes that "there is a paucity of testimony regarding the actual danger from [appellant's] driving." The State failed to prove that others were actually endangered. *See id.* Thus, the evidence is insufficient to establish the second prong of the *Sierra* test. The proper

remedy is to delete the deadly weapon finding.  *See Williams v. State*, 970 S.W.2d 566, 566 (Tex. Crim. App. 1998).

Appellant's second issue is sustained.

## IV. IMPROPER ARGUMENT

In his third issue, appellant complains of improper jury argument by the State during its closing argument.

### A. Applicable Law

Jury argument is permissible if it constitutes a summation of the evidence, a reasonable deduction from the evidence, an answer to argument of opposing counsel, or a plea for law enforcement.  *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008).  To complain of improper jury argument, a defendant must generally object to the argument and pursue his objection to an adverse ruling.  *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *Nadal v. State*, 348 S.W.3d 304, 319 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).  If the trial court sustains the objection, the defendant must also request an instruction to disregard and move for a mistrial.  *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993); *Campos v. State*, 946 S.W.2d 414, 417 (Tex. App.—Houston [14th Dist.] 1997, no pet.).

### B. Discussion

Appellant complains that the State misstated its burden during closing argument. In relevant part, the prosecutor told the jury:

> We heard evidence that this defendant got in his vehicle, left his house and attempted to drive to the store.  At that point, he's guilty of driving while intoxicated.  Hypothetically, if he has a seizure at some point while he's driving, guess what?  He's still guilty of driving while intoxicated . . . [the medical condition] doesn't erase the fact that maybe something caused him to crash or whatever it might be.  You don't just get to stop

9

and look there. He was intoxicated on the Hydrocodone and Soma when he left his house. The only way that you can find him not guilty in this case is if you believe there was no way those drugs were having any effect on his ability to drive. And if you believe that, there's no way that you can say that those drugs at those levels were having an effect on his mental and physical faculties.

At this point, counsel for appellant objected that the prosecutor had mischaracterized the State's burden, ostensibly because the prosecutor used the term "any effect," rather than the effect of not having normal use of his physical and mental faculties. After the trial court overruled the objection, the prosecutor continued: "If you don't believe that those drugs were having an effect on his mental and physical faculties and ability to drive a vehicle, then find him not guilt[y]."

Assuming without deciding that the State's argument was improper, the trial court's error in overruling appellant's objection is reversible only if it affected appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). In the context of improper jury argument, this determination is made by "balancing the following three factors: (1) severity of the misconduct (prejudicial effect), (2) curative measures, (3) the certainty of conviction absent the misconduct." *Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000).

Here, the degree of misconduct, if any, is minimal. The State's argument appears to have been an effort—albeit perhaps a poorly-executed effort—to emphasize the overwhelming evidence of appellant's intoxication by three different drugs found in his blood at the time of the accident. Although the State may not have used the appropriate terminology in its argument, the prejudicial effect, if any, is unclear and speculative. Thus, the first factor carries very little weight in this case.

10

The second factor, curative measures, is also marginal in this case because the trial court overruled appellant's objection and did not give a curative instruction. Nevertheless, we note that, after the objection was overruled, the State did make an effort to correct what was arguably a misstatement of its burden by telling the jury to find appellant not guilty if they did not believe the drugs were having "an effect" on him.

The third factor weighs heavily in the State's favor. The evidence of appellant's guilt is substantial. Three different drugs were detected in appellant's blood at levels that, according to the expert testimony adduced at trial, would result in intoxication and possibly death. A police video captured behavior by appellant consistent with signs of intoxication, including slurred speech, inability to answer questions promptly, stumbling, and holding onto things. There was expert medical testimony that appellant's obvious impairment was due to intoxication, not his pre-existing medical conditions.

Given the minimal degree of misconduct, if any, the State's attempt to correct its error, and the overwhelming evidence of appellant's guilt, we conclude that any error with respect to the trial court's ruling was harmless.

Appellant's third issue is overruled.

## V. JURY CHARGE ERROR

In his fourth issue, appellant complains that the jury charge contained a non-statutory definition of "normal use."

## A. Standard of Review

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm.

11

*Middleton v. State*, 125 S.W3d 450, 453-54 (Tex. Crim. App. 2003). If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). Conversely, if error was not preserved at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning appellant did not receive a fair and impartial trial. *Id.* To obtain reversal for jury-charge error, appellant must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

## B. Applicable Law

The trial court must provide the jury with "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). Moreover, the trial court may not express "any opinion as to the weight of the evidence." *Id.*; *Walters v. State*, 247 S.W.3d 204, 208 (Tex. Crim. App. 2007). Because "[j]uries are free to consider and evaluate the evidence in whatever way they consider it relevant to the statutory offenses, special, non-statutory instructions, even when they relate to statutory offenses or defenses, generally have no place in the jury charge." *Kirsch v. State*, 357 S.W.3d 645, 652 (Tex. Crim. App. 2012) (internal quotations omitted).

Texas Government Code section 311.011 provides that statutorily undefined words and phrases shall be "construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning . . . shall be construed accordingly." TEX. GOV'T CODE ANN. § 311.011 (West 2005). The Texas Court of Criminal Appeals has explained that jurors may "freely read [undefined] statutory language to have any meaning which is acceptable in common parlance."

12

*Kirsch*, 357 S.W.3d at 650.  Conversely, "terms which have a known and established legal meaning, or which have acquired a peculiar and appropriate meaning in the law, as where the words used have a well-known common law meaning, are considered as having been used in their technical sense."  *Id.*  Although an appellate court may articulate a definition of a statutorily undefined, common term in assessing the sufficiency of the evidence on appellate review, a trial court's inclusion of that definition in a jury charge may constitute an improper comment on the weight of the evidence.  *Id.* at 651.

## C.  Discussion

The term "normal use" is included within the statutory definition of "intoxicated," an essential element of the offense charged.  *Baggett v. State*, 367 S.W.3d 525, 527 (Tex. App.—Tyler 2012, pet. ref'd).  "Normal use" is not defined by statute.  *Id.*  Thus, the State asks this Court to "assume that it was error to include a non-statutory definition in the jury charge."

Appellant preserved this issue based on a timely objection that was overruled; thus, we must determine whether appellant suffered "some harm" as a result of the error.  *See Sanchez*, 376 S.W.3d at 774.  The harm caused by the error must be considered "in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of probative evidence, the arguments of counsel and any other relevant information revealed by the record of the trial as a whole."  *Id.* at 774–75.  Appellant must have suffered actual harm, not merely theoretical harm.  *Id.* at 775.

13

The jury charge defined "normal use" as "the manner in which a normal non-intoxicated person would be able to use his or her mental or physical faculties." The instruction caused no harm to appellant because it was "mild, neutral, and an obvious common-sense proposition." *Baggett*, 367 S.W.3d at 529. Moreover, as noted above, the jury was presented with overwhelming evidence of appellant's guilt. *See Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989) ("[T]he presence of overwhelming evidence of guilt plays a determinative role in resolving the issue."). Thus, the error, if any, was benign and harmless.

Appellant's fourth issue is overruled.

## VI. CONCLUSION

The judgment of the trial court is modified to delete the deadly weapon finding and affirmed as modified.

_____
ROGELIO VALDEZ
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
31st day of January, 2013.

14